**Orlando PAGE, Appellant–Petitioner,**

**v.**

**STATE of Indiana, Appellee–Respondent.**

**No. 27A02–9805–PC–465.**

Court of Appeals of Indiana.

Feb. 24, 1999.

Transfer Denied April 29, 1999.

Susan K. Carpenter, Public Defender of Indiana, Chris Hitz–Bradley, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant:

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee:

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Petitioner–Appellant Orlando Page (Page) appeals from the denial of his petition for post-conviction relief.

We affirm.

### ISSUE

Page presents two issues which we consolidate and restate as: whether the post-conviction court erred in its. denial of Page's claim that the trial court erred in sentencing him.

### FACTS AND PROCEDURAL HISTORY

On March 22, 1993, Page pled guilty to dealing in cocaine, a Class B felony. A plea agreement was negotiated whereby Page was to receive a sentence of no more than six years executed. The trial court sentenced Page to ten years with .eight years suspended. Page filed a motion to correct erroneous sentence which the trial court denied. Subsequently, Page filed his petition for post-conviction relief which was also denied by the trial court. Page then filed a motion to correct error as to the court's denial of his petition for post-conviction relief. The court granted Page's motion in part and held a hearing on his previously denied petition for post-conviction relief. Following the hearing, the court denied Page's petition for post-conviction relief. This appeal ensued.

### DISCUSSION AND DECISION

Page contends that the post-conviction court erred in its denial of his claim that the trial court erred in sentencing him. Particularly, Page argues that the trial court, in contravention of his plea agreement, improperly sentenced him to ten years with eight years suspended.

A post-conviction petition under Ind. Post–Conviction Rule 1 is a quasi-civil remedy, and, as such, the petitioner bears the burden to prove by a preponderance of the evidence that he or she is entitled to relief. *Mato v. State*, 478 N.E.2d 57, 60 (Ind.1985); P–C.R. 1, § 5. The judge who presides over a post-conviction hearing possesses exclusive authority to weigh the evidence and determine the credibility of the witnesses. *Stewart v. State*, 517 N.E.2d 1230, 1231 (Ind.1988). Therefore, upon review of a denial of post-conviction relief, the appellate court will not set aside the post-conviction court's ruling unless the evidence is without conflict and leads solely to a result different from that reached by the post-conviction court. *Id.* In making this determination, we consider only the evidence that supports the decision of the post-conviction court together with any reasonable inferences. *McCullough v. State*, 672 N.E.2d 445, 447 (Ind.Ct.App.1996).

A plea agreement is contractual in nature and binds the defendant, the state and the trial court. *Pritscher v. State*, 675 N.E.2d 727, 732 (Ind.Ct.App.1996). The trial court is given the discretion to accept or reject a plea agreement, and, if it accepts the agreement, it is strictly bound thereby. *Id.;* Ind.Code § 35–35–3–3(e). In order to avoid mistakes and misrepresentations with regard to such a binding agreement, counsel should reduce to writing all terms of a plea agreement. *See Richardson v. State*, 456 N.E.2d 1063, 1067 (Ind.Ct.App.1983).

In the present case, Page, his attorney, and the prosecuting attorney negotiated a plea agreement that provided for sentencing to be left to the court's discretion. Although the written plea agreement did not include all of the terms of their agreement, Page, his counsel, the State and the court

discussed the omitted terms at length at both the plea hearing and sentencing. The record reveals that at the entry of plea hearing, the plea agreement was amended to provide for a time cap of six years executed. Defense counsel informed the court of a six year time cap, and, following a discussion between defense counsel and the court, the parties agreed that the executed portion of Page's sentence was not to exceed six years. The court later questioned Page as to his understanding of this specific term of the plea agreement, and Page indicated he understood that his sentence would not exceed six years executed. The colloquy took place as follows:

> MR. LOVE [Defense counsel]: Judge, with your permission. Uhm, outside the ... the docu ... the wording of the plea recommendation there is also an agreement between the State of Indiana and the defendant that at sentencing the ... the defendant will be eligible for a six year time cap, that the defendant may argue for either a time served or a suspended sentence, and by his criminal record he is eligible, that the State of Indiana will stand mute as to those arguments. Is that correct, Mr. Heck [the State]?
>
> THE STATE: My understanding, and there's been some discussion since I last talked to, uh, the office, but, uh, the six year portion as represented, uh, was my understanding of what the State would be asking for, uh, as a result of ... of things that the defendant has done, uh, of benefit to the State.
>
> THE COURT: Well, let's take it one step at a time here. You've agreed there's a, would be a six year time cap....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> THE COURT: So we'll show the plea agreement, uh, further amended, uh, to provide for an executed cap of six years.... Does that satisfy your client, Mr. Love?
>
> MR. LOVE: Judge, it does, except that the court said a six year executed time cap. It's my understanding that if we were to put a six year executed time cap that he would get six years in prison. Uh, we

would ask the Court to have the understanding that it's a six year time cap.

> THE COURT: No, six year ex ... six year maximum we would order executed, which means it would be done in three.
>
> MR. LOVE: Yes, sir.
>
> THE COURT: In other words, I'm not gonna, if, if, if I decide to give him the max I could give him with a six year cap, I'm not going to give him twelve to get him six in prison. Is that ... is that what you're looking at?
>
> MR. LOVE: Yes, sir, except that he would be eligible for a suspended [sic] so the court would not be bound to give him a six year sentence.
>
> THE COURT: I ... I understand that. That's a cap. That's not a ... that's not, uh, flat agreement on the sentence, that's just an agreement that the sentence will not exceed, the executed portion of the sentence will not exceed six years.
>
> MR. LOVE: Yes sir.
>
> THE COURT: Alright.
>
> MR. LOVE: Thank you, sir.
>
> THE COURT: Okay. Do you understand all that, Mr. Page?
>
> THE DEFENDANT: Yes I do.

(R. 88–94).

> THE COURT: Do you understand, however, that in this case there is an executed cap on your sentence of six years and that, uh, your sentence could not exceed six years executed?
>
> THE DEFENDANT: Yes.

(R. 103).

Subsequently at the sentencing hearing, defense counsel indicated he wanted to clarify the time cap provision contained in Page's plea agreement. After receiving clarification that the time cap was six years executed, defense counsel indicated he understood.

> MR. LOVE: I ... I have a question, Your Honor. Uh, in as much as there was a ten year time cap, does the Court have the jurisdiction to sentence up to ten years?
>
> THE COURT: Par ... pardon me. I ... I, my recollection was there was a ten year time cap. Are you saying there was a six year time cap?

MR. LOVE: I'm sorry. Six year time cap.

THE STATE: State's understanding, uh, is that the provision that was included indicated an executed cap of six years.

MR. LOVE: Okay.

THE STATE: That was the State's understanding.

MR. LOVE: I just wanted to clear it up.

THE STATE: Okay.

MR. LOVE: And we're now clear. Thank you.

(R. 143–145).

The trial court sentenced Page to ten years with eight years suspended. Therefore, Page was required to actually serve two years executed. The trial court was bound by the terms of the plea agreement and properly sentenced Page in accordance with the agreement.

Additionally, Page claims that the State and the court used the term "executed" in an unusual manner and that, because of this unusual usage, the court should have explained the term's meaning to him. Page argues that his guilty plea should be vacated because the court failed to explain the meaning of the term. We decline to address this issue based upon Page's failure to present cogent argument and cite authority that supports his proposition. *See Sipe v. State*, 690 N.E.2d 779, 781 (Ind.Ct.App.1998) (failure to present cogent argument and citation to authority results in waiver of issue on appeal).

### CONCLUSION

Based upon the foregoing, we find the post-conviction court did not err in denying Page's claim that the trial court improperly sentenced him.

Affirmed.

STATON, J., concurs.

BROOK, J., dissents with separate opinion.

### BROOK, Judge, dissenting

I respectfully dissent. Upon reviewing the record, I am convinced that Page was neither sufficiently informed of nor understood the sentencing provisions of his plea agreement as determined during both the guilty plea and sentencing hearings. Page argues that the plea agreement had set a six-year sentencing cap and that the trial court violated the terms of this agreement by sentencing him to ten years with eight years suspended.

It may be fair to assume that Page would never have challenged the validity of his plea agreement had he not violated the terms of his probation and been required to serve the suspended portion of his sentence. Page tested positive on urine screens for cocaine use on three separate occasions in late 1993 and admitted to using cocaine in violation of his probation conditions. Page's probation officer filed a petition for revocation of his probation on August 24, 1994. On October 24, 1994, the court revoked Page's probation and ordered him to serve the remaining eight years of his original ten-year sentence.

To address the sentencing issue in sufficient detail, it is necessary to excerpt significant portions of the transcripts from Page's guilty plea and sentencing hearings.[1] On March 22, 1993, Page appeared with counsel at his guilty plea hearing:

MR. LOVE [Page's counsel]: Judge, at this time, we would, uh, submit to the Court a plea recommendation which has been negotiated between the defendant and his attorney. Uh, the plea recommendation is signed by Deputy Prosecutor, Mr. Heck, by myself, and by the defendant, Orlando Page. He did have an opportunity to read it. He is aware of all of the contents.

THE COURT: Okay, Mr. Page, there's been a plea agreement filed here today. It provides you will enter a plea of guilty to Count 1: Dealing in Cocaine, Class B Felony. It provides that the State of Indiana and you agree that the sentence, if this agreement is accepted, shall be left open and to the Court's discretion. It provides you will testify truthfully, if necessary, in [two] Grant County Circuit Court cases [names omitted]. It provides that the charge of Count 2: Conspiracy to Deal in Cocaine, a Class A Felony, will be dis-

---

1. Please note that relevant sections of the transcript have been underlined for emphasis.

missed. Is that your understanding of the plea agreement?

THE DEFENDANT [Page]: Yes.

THE COURT: Did you read the plea agreement?

THE DEFENDANT: Yes I did.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No.

THE COURT: Attached to it is a page entitled "Defendant's Acceptance of Plea Agreement". Did you read and understand that page?

THE DEFENDANT: Yes.

MR. LOVE: Judge, with your permission. Uhm, outside the...the docu...the wording of the plea recommendation there is also an agreement between the State of Indiana and the defendant that at sentencing the...the defendant will be eligible for a six year time cap, that the defendant may argue for either a time served or a suspended sentence, and by his criminal record he is eligible, that the State of Indiana will stand mute as to those arguments. Is that correct, Mr. Heck?

THE STATE: My understanding, and there's been some discussion since I last talked to, uh, the office, but, uh, the six year portion as represented, uh, was my understanding of what the State would be asking for, uh, as a result of...of things that the defendant has done, uh, of benefit to the State.

THE COURT: Well, let's take it one step at a time here. You've agreed there's a, would be a six year time cap, uhm, the other matters, I think you're always free to argument at, uh, time of sentencing for whatever you deem is appropriate. I don't know that that needs to go into the plea agreement. However, whether the State's going to stand mute or not is something that...that very definitely should be addressed. Mr. Heck, is it your intention to stand mute?

THE STATE: Uh, yes, Your Honor, that is my intention.

THE COURT: So we'll show the plea agreement, uh, further amended, uh, to provide for an executed cap of six years

and that further to show that the defendant will...or pardon me, that the State of Indiana will stand mute at the, uh, sentencing. Does that satisfy your client, Mr. Love?

MR. LOVE: Judge, it does, except that the court said a six year executed time cap. It's my understanding that if we were to put a six year executed time cap that he would get six years in prison. Uh, we would ask the Court to have the understanding that it's a six year time cap.

THE COURT: No, six year ex...six year maximum we would order executed, which means it would be done in three.

MR. LOVE: Yes, sir.

THE COURT: In other words, I'm not gonna, if, if, if I decide to give him the max I could give him with a six year cap, I'm not going to give him twelve to get him six in prison. Is that...is that what you're looking at?

MR. LOVE: Yes, sir, except that he would be eligible for a suspended so the court would not be bound to give him a six year sentence.

THE COURT: I...I understand that. That's a cap. That's not a...that's not, uh, flat agreement on the sentence, that's just an agreement that the sentence will not exceed, the executed portion of the sentence will not exceed six years.

MR. LOVE: Yes sir.

THE COURT: Alright.

MR. LOVE: Thank you, sir.

THE COURT: Okay. Do you understand all that, Mr. Page?

THE DEFENDANT: Yes I do.

\*      \*      \*      \*      \*      \*

THE COURT: Do you understand the minimum possible sentence for a class B felony is six years? In other words, from the basic sentence of ten years the court may subtract up to four years for mitigating circumstance[s] resulting in a minimum sentence of six years.

THE DEFENDANT: Yes.

THE COURT: Do you understand, however, that in this case there is an executed cap on your sentence of six years and that,

uh, your sentence could not exceed six years executed?

THE DEFENDANT: Yes.

\* \* \* \* \* \*

THE COURT: Do you understand the Court's not a party to the plea agreement, that I can either accept it or reject it, but that if I reject it I would have to withdraw your plea of guilty and reinstate your previous plea of not guilty?

THE DEFENDANT: Yes.

THE COURT: And if I accept the plea agreement I'll be bound by its terms.

THE DEFENDANT: Yes.

\* \* \* \* \* \*

THE COURT: Satisfied with your attorney Mr. Love?

THE DEFENDANT: Yes.

THE COURT: Do you feel he's properly representing you?

THE DEFENDANT: Yes.

THE COURT: Has he, or anybody else, told you anything different from what I've told you here today?

THE DEFENDANT: No.

THE COURT: Do you understand everything that's gone on here today?

THE DEFENDANT: Yes.

THE COURT: Is there anything you want me to explain further to you?

THE DEFENDANT: No.

THE COURT: Do you still want... pardon me. Do you want time now to consult with your lawyer?

THE DEFENDANT: No.

THE COURT: Still want to plead guilty per the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Court now finds that the defendant understand[s] the nature of the charge against him to which he's pled guilty, that he understands the possible sentence thereunder, that the plea was made freely and voluntarily, that...that the plea is accurate, that there's a basis in fact for defendant's offered plea of guilty....

Page then appeared with counsel at his sentencing hearing on April 19, 1993. During his statement on Page's behalf, defense counsel made the following request:

> If the Court sees fit to sentence him there's a time cap, uh, we'd like to ask the court to sentence him to the time cap, uh, allow him a split sentence, a split sentence to be time served for the executed portion and then suspend the remainder on probation and then include in that probation the components of intensive house arrest, work release, or...or the...the work component, and then the...the drug dependency component. Thank you.

The State then offered a few remarks regarding Page's "considerable assistance to the State" in its prosecution of two drug dealers and agreed "that that should be taken into consideration by the Court." The hearing continued as follows:

THE COURT: Pre-sentence recommended six years [actual recommendation reads "ten (10) years incarceration [ ] with six (6) years to be executed and four (4) years to be suspended and four (4) years probation following the executed portion of the sentence"]. In view of the cooperation the court was thinking more along the lines of two years executed and eight years suspended. Do you see any problem with that, Mr. Heck? [State asked defense counsel's permission to answer the court's questions, which was granted.]

THE STATE: Okay. Uh, then the State sees no problem with that, in answer to the Court's question.

THE COURT: Pursuant to the defendant's plea of guilty the court finds the defendant guilty, pronounces judgment of conviction. Defendant is sentenced to ten years at the Indiana Department of Corrections. Of that two years is to [be] executed, eight years is to be suspended. Suspended portion of the sentence, the defendant is to be on probation on such terms and conditions as the probation department shall prepare and file with the Court in writing. Among the conditions of probation shall be that the defendant undergo drug and alcohol evaluation, that he follow through with all recommendations therein, that he perform 100 hours of community service. Defendant is granted

credit for 311 days spent in jail awaiting disposition of this charge....

\*    \*    \*    \*    \*    \*

MR. LOVE: I...I have a question, Your Honor. Uh, in as much as there was a ten year time cap, does the Court have the jurisdiction to sentence up to ten years?

THE COURT: Par...pardon me. I...I, my recollection was there was a ten year time cap. Are you saying there was a six year time cap?

MR. LOVE: I'm sorry. Six year time cap.

THE STATE: State's understanding, uh, is that the provision that was included indicated an executed cap of six years.

MR. LOVE: Okay.

THE STATE: That was the State's understanding.

MR. LOVE: I just wanted to clear it up.

THE STATE: Okay.

MR. LOVE: And we're now clear. Thank you.

Before addressing any substantive issues, I wish to stress the critical importance of reducing all terms of a plea agreement to writing; in Page's case, the parties' failure to record and define the nature of the sentencing cap within the agreement before the guilty plea hearing may have led to unforeseen and unfortunate consequences.[2] *See Richardson v. State*, 456 N.E.2d 1063, 1067 (Ind.Ct.App.1983), *quoting Spalding v. State*, 165 Ind.App. 64, 70, 330 N.E.2d 774, 778 (Ind.Ct.App.1975) (failure to reduce an agreement to writing "can lead to misapprehension, mistake, or even calculated misrepresentation"). "[I]n the interests of justice, the terms of such agreements should be placed of record before a sentence is imposed

on the one pleading guilty [citation omitted]. It is incumbent on both parties to see that the agreement's terms are recorded accurately." *Richardson*, 456 N.E.2d at 1067. In the case at bar, it is nearly impossible to determine whether Page, his attorney, and the trial court were of one mind with respect to the ramifications of Page's sentence because the plea agreement submitted to the court contained no reference to the six-year sentencing cap.

With respect to the confusion perpetuated by both the trial court and counsel during the hearings, it is worth noting that the term "executed" is not defined in any Indiana statute regarding criminal sentencing. "Execution of sentence" may be defined as the "process of performing a judgment or sentence of court." 15A *Words and Phrases* 206 (West 1998 cumulative pamphlet) (citation omitted). An executed sentence in a criminal case is understood to require the incarceration of a defendant, with the possibility of his receiving one day of credit time for each day of imprisonment under IND. CODE § 35–50–6–3(a); a defendant may therefore be released from prison after serving three years of a six-year executed sentence.

In contrast, "a suspended sentence in criminal law means in effect that defendant is not required at the time sentence is imposed to serve the sentence." *Black's Law Dictionary* 1446 (6th ed.1990). In the instant case, Page served the duration of his two-year executed sentence (minus 311 days credit for time served awaiting trial) and was then placed on probation pursuant to the trial court's judgment. *See generally* IND. CODE §§ 35–38–2–1, 35–38–2–2.3, 35–38–2–3 (conditions of probation and violation thereof). Thus, Page's sentence may be classified

---

2. The record contains two plea agreement forms. The first agreement leaves sentencing to the trial court's discretion and was signed only by Page and the deputy prosecutor on October 20, 1992. The second agreement is apparently a photocopy of the original form and contains what Page refers to in his brief as the trial court's handwritten addition to the sentencing provision (shown in brackets below), such that it reads "the sentence, if this agreement is accepted, shall be open and left to the Court's discretion [with executed cap of 6 yrs.]"; this agreement contains the signatures of the deputy prosecutor (dated October 20, 1992), Page's attorney (dated March 22, 1993), and Page himself. Page's signatures on the two documents do appear to differ from each other, indicating that Page signed each form separately. It is important to note, however, that during the guilty plea hearing, Page's attorney submitted the signed plea recommendation form to the court before sentencing was discussed; therefore, I contend that Page did not sign (and thereby signify his understanding and approval of) the plea recommendation form before the court added its handwritten notations regarding sentencing.

as a "split" sentence. *See Black's Law Dictionary* 1401 ("sentence by which the defendant serves some time and the balance of the sentence is suspended").

Mr. Love, Page's attorney, was the first to mention the possibility of a six-year sentencing cap during the guilty plea hearing, suggesting that Page "may argue for either a time served or a suspended sentence." By not referring to the cap as an *executed* cap, Love obviously intended to request a six-year *total* sentence that would include both executed and suspended time. The issue became clouded when the State referred to "the six year portion as represented" by Love but did not use the word "executed." The trial court then confirmed that the parties had agreed to a "six year time cap" and asked the State whether it intended to stand mute at sentencing. After receiving an affirmative reply, the court then remarked that it would "show the plea agreement, uh, further amended, uh, to provide for an *executed* cap of six years [emphasis supplied]."

During the April 19, 1993, sentencing hearing, Love again appeared to be laboring under the impression of a six-year total sentence cap[3] and requested that the court split Page's sentence "to be time served for the executed portion and then suspend the remainder on probation." The court, obviously laboring under the impression of a six-year *executed* sentence cap, noted that the pre-sentencing report had recommended six years (executed, of a 10-year total sentence) and mused that it was "thinking more along the lines of two years executed and eight years suspended." This sentence was indeed pronounced by the court, prompting Love to ask whether it had the jurisdiction to sentence Page up to 10 years. The court responded that its recollection was of a 10–year time cap. Love answered, "I'm sorry. Six year time cap." The State, which had agreed to remain mute at sentencing, chimed in, "State's understanding, uh, is that the provision that was included indicated an executed cap of six years." Love then indicated that he had "just wanted to clear it up....[a]nd we're now clear." The dispositive question remains whether Page was in fact clear about his sentence.

The majority correctly sets forth the standard from *Pritscher* that the defendant, the State, and the trial court are bound by the terms of the plea agreement. 675 N.E.2d at 732. However, Page's references to *Reffett v. State*, 571 N.E.2d 1227 (Ind.1991) and *Steele v. State*, 638 N.E.2d 1338 (Ind.Ct.App. 1994) are well taken, given that the trial court never expressly accepted the terms of the plea agreement prior to sentencing. In fact, the trial court did not expressly accept Page's guilty plea during the guilty plea hearing; not until the April 19, 1993, sentencing hearing did the trial court specifically find Page guilty pursuant to his plea.[4]

"Once a plea is accepted, a court is bound by all the terms in the plea agreement which are within its legal power to control." *Reffett*, 571 N.E.2d at 1230. Assuming, *arguendo*, that Page read and signed the second plea agreement form containing the trial court's handwritten notation of the "executed cap of 6 yrs.," we must then consider whether the terms of the agreement as written accurately reflect Page's understanding of his possible sentencing options as explained to him during the plea hearing. *Cf. Coomer v. State*, 652 N.E.2d 60, 62 (Ind.1995) ("[d]id the defendant appreciate the sentencing ramifications of admitting guilt? ... [a] court

---

**3.** In examining the record, one may reasonably draw the conclusion that Love may have confused the duration of an executed sentence with the number of years a defendant must serve in prison ("It's my understanding that if we were to put a six year executed time cap that he would get six years in prison"). On the contrary, assuming that a defendant would earn day-for-day credit under IND. CODE § 35–50–6–3(a), he would serve only three years of his six-year executed sentence in prison. Love's apparent misunderstanding on this point may be the reason he did not question the trial court or counsel Page regarding the possible ramifications of ac-

cepting a ten-year sentence in exchange for a guilty plea.

**4.** In its order on guilty plea agreement, dated March 22, 1993, the trial court recorded that it found Page's "plea of guilty to be freely and voluntarily made and to have a factual basis therefore [sic]." The last sentence of the order notes: "Judgment on the findings." Although this remark may constitute acceptance of Page's guilty plea, it does not appear in the transcript of the guilty plea hearing.

must examine questions of this sort to confirm that a defendant is acting freely and knowingly before accepting a guilty plea").[5]

Not only did the trial court unilaterally insert the concept of an executed sentence cap into the sentencing discussion, but it also presented two significantly different sentencing options to Page as if they were identical:

(1) [T]hat's just an agreement that the sentence will not exceed, the executed portion of the sentence will not exceed six years.... Do you understand all that, Mr. Page?

(2) Do you understand, however, that in this case there is an executed cap on your sentence of six years and that, uh, your sentence could not exceed six years executed?

The practical meaning of the first option is that the court could impose a total sentence greater than six years, but the executed portion thereof could not exceed six years; the second option would provide for a maximum sentence of six years executed. To further add to the confusion, the court began its explanations using language that contradicted the concepts expressed at the end of each sentence.

The court also changed its definition of the six-year cap in discussions with Love, Page's attorney. After mentioning the possibility of an "executed cap of six years," Love asked the court "to have the understanding that it's a six year time cap."

THE COURT: No, six year ex...six year maximum we would order executed, which means it would be done in three.

MR. LOVE: Yes, sir.

THE COURT: In other words [...] if I decide to give him the max I could give him with a six year cap, I'm not going to give him twelve to get him six in prison....

MR. LOVE: Yes, sir, except that he would be eligible for a suspended so the court would not be bound to give him a six year sentence.

THE COURT: I...I understand that. That's a cap. That's not a...that's not, uh, flat agreement on the sentence, that's just an agreement that the sentence will not exceed, the executed portion of the sentence will not exceed six years.

The trial court carelessly used the word "executed" during this exchange, perhaps leading Page and his attorney to believe that the court would issue a total sentence of no more than six years. As mentioned above, the trial court added a handwritten notation to the plea agreement, setting the executed sentence cap at six years. At the sentencing hearing, the court revealed that it had mistakenly recalled a provision for a 10–year time cap in Page's case, whereupon the State obtruded its understanding of an executed six-year cap into the proceedings. The plea agreement itself neither explains nor defines a six-year executed sentencing cap, nor does it discuss the possibility that Page might receive a split sentence totaling more than six years and possibly serve an executed sentence of more than six years as a consequence of a probation violation.[6]

The question of whether a guilty plea has been intelligently and voluntarily entered is primarily factual, and we must defer to the trial court's judgment unless the evidence shows that the only reasonable conclusion is contrary to that reached by the trial court. *Ewing v. State*, 171 Ind.App. 593, 599, 358 N.E.2d 204, 208 (Ind.Ct.App.1976). In *White v. State*, the supreme court emphasized that "a plea hearing conducted in accordance with [IND. CODE § 35–35–1–2] is the best way to assure that a defendant's plea is made voluntarily and intelligently." 497 N.E.2d 893, 905 (Ind.1986). IND. CODE § 35–35–1–2 requires the court to determine that a defen-

---

5. It is not my intention to require a trial court to explain in exhaustive detail all the possible ramifications of a defendant's sentence contained in a plea agreement; in fairness to and for the benefit of all parties, this information should be contained in the written plea agreement. The court can therefore use the plea agreement merely as a point of reference to determine the defendant's understanding of his sentence.

6. In the instant case, there is the remote but theoretical possibility that Page would be required to serve more than six years in prison because of one or more violations of department of correction rules under IND. CODE § 35–50–6–5, thereby depriving him of credit time earned under IND. CODE § 35–50–6–3(a).

dant understands the nature of the charge against him; has been informed that he is waiving fundamental constitutional rights by pleading guilty; has been informed of the maximum and minimum possible sentences for the crime charged; and has been informed that if the court accepts the plea, it shall be bound by the terms of the agreement. A review of the record indicates that the trial court followed these statutory prerequisites to the letter; however, "[d]efendants who can prove that they were actually misled by the judge, the prosecutor, or defense counsel about the choices before them will present colorable claims for relief." *White*, 497 N.E.2d at 905–906.

I do not mean to suggest that either the trial court or counsel sought actively to mislead Page in any way as to the ramifications of his sentence. Rather, I am troubled by the confusing manner in which the sentencing provisions were explained to Page and the manner in which the trial court sought to determine Page's understanding of his possible sentence:

> [T]he role of the trial judge is that of an impartial and detached arbiter uniquely qualified not only to impart the requisite solemnity to the proceeding but also to make the required judgments as to the defendant's understanding of the gravity of the rights he is waiving by the plea as well as the consequences of the plea.

*Watson v. State*, 463 N.E.2d 535, 536 (Ind. Ct.App.1984), *trans. denied*. Here, both Page and his attorney were apparently confused by the trial court's use of the word "executed" and its mistaken recollection of the sentencing cap. Admonitions regarding a defendant's fundamental rights during plea negotiations may also apply to guilty plea hearings:

> Explanations may have been made to the defendant which superficially satisfy his questions. The defendant's agreement rather than his understanding may predominate this meeting [footnote omitted]. Furthermore, the answers given by the defendant to the questions on the printed guilty plea form may be considered by the parties as a formal consummation of their guilty plea agreement. An objective approach to the question of voluntariness may have been blunted by more complicated and detailed parts of the plea negotiations. Only an objective, impartial interrogation of the defendant when he enters his guilty plea can assure that the plea is entered voluntarily.

*Ewing*, 171 Ind.App. at 604, 358 N.E.2d at 211 (Staton, J., dissenting). Having examined the transcripts of the hearings, I am convinced that Page merely indicated his agreement with the trial court's statements and could not have fully understood the sentencing provisions and their possible consequences before he entered his guilty plea.

Among the fundamental constitutional rights waived by Page pursuant to his plea agreement are the right to "a public and speedy trial by jury"; the right to "confront and cross-examine the witnesses against him"; the right to "have compulsory process for obtaining witnesses in his favor"; and the right to "require the state to prove his guilt beyond a reasonable doubt at a trial at which the defendant may not be compelled to testify against himself." IND. CODE § 35–35–1–2. Before a defendant waives these threshold rights, a court must ensure that the defendant has entered his guilty plea "knowingly, voluntarily and intelligently." *See Ewing*, 171 Ind.App. at 597, 358 N.E.2d at 207. In the instant case, I cannot agree that Page was intelligently informed about the sentencing provisions that were offered by the court in exchange for his guilty plea and the consequent waiver of his fundamental rights. The fact that Page failed to challenge his sentence before he violated the terms of his probation should not preclude this Court from vacating his guilty plea. *See id.*, 171 Ind.App. at 599, 358 N.E.2d at 208 (if the post-conviction court "concludes by a simple preponderance of the evidence that the plea was not intelligently and voluntarily given, the plea should be set aside"). Accordingly, I would reverse the judgment of the post-conviction court.