## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 17 2017, 5:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbra A. Stooksbury
Howes & Howes, LLP
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela Sanchez
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenyatta Robinson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 17, 2017<br><br>Court of Appeals Case No.<br>46A04-1511-CR-2040<br><br>Appeal from the La Porte Circuit Court<br><br>The Honorable Thomas Alevizos, Judge<br><br>Trial Court Cause Nos.<br>46C01-1502-FA-147<br>46C01-1103-FA-169 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Kenyatta Robinson was found guilty of three counts of aiding, inducing, or causing dealing in cocaine, one count as a Class B felony and two counts as Level 4 felonies. Robinson was also found to be an habitual offender. The trial court sentenced Robinson to an aggregate sentence of thirty-six years executed in the Indiana Department of Correction. Robinson appeals his convictions and sentence, raising two issues for our review: (1) whether the evidence is sufficient to sustain his convictions, and (2) whether his sentence is inappropriate in light of the nature of the offenses and his character. Concluding the evidence is sufficient and his sentence is not inappropriate, we affirm.

# Facts and Procedural History

[2] In the months of June and July 2014, the LaPorte County Sheriff's Department narcotics unit used confidential informants to conduct three controlled buys. In June, confidential informant Piper Hanna notified law enforcement she could obtain drugs from Robinson. Hanna first met Robinson in person after a friend directed her to contact him if she needed drugs. On a daily basis, Hanna would purchase drugs from Robinson by calling him on his cell phone and requesting a specific amount of drugs. Robinson would then direct Hanna to a specific location and another individual would "show[] up" and deliver the drugs. Transcript at 327.

On June 27, 2014, law enforcement conducted the first controlled buy. Hanna called Robinson and ordered $100 worth of cocaine. Robinson then directed Hanna to a local bar. Once there, Hanna called Robinson to ask where he was and Robinson replied, "Somebody will show up." *Id*. at 328. Shortly thereafter, Dorothy Dunham arrived and approached Hanna. Hanna asked Dunham where Robinson was and Dunham explained Robinson "sent her." *Id*. at 330. Dunham then gave Hanna cocaine in exchange for $100.[1]

In July 2014, confidential informant Sherman Arnett notified the narcotics unit he could purchase drugs from Robinson. In the six-months prior, Arnett stated he purchased drugs from Robinson between fifty and sixty times and sometimes "someone other than [Robinson] would show up" with the drugs. *Id*. at 372-73. On July 15, 2014, law enforcement conducted a second controlled buy. Arnett called Robinson and ordered $50 worth of cocaine. Robinson then directed Arnett to a nearby house where someone would meet him. When he arrived at the home, Arnett met Sable Connor—Robinson's girlfriend—and purchased $50 worth of cocaine. Connor testified she met Robinson and gave him the money after meeting Arnett.

---

[1] At trial, Dunham admitted to delivering cocaine to Hanna on June 27 and described herself as Robinson's drug runner, often delivering drugs for Robinson twenty to thirty times a day in exchange for cocaine. Dunham explained people would call Robinson and order drugs and then Robinson would give her the drugs and direct her to where to meet the buyers. Dunham would then deliver the drugs and return the money to Robinson.

On July 16, 2014, law enforcement conducted a third controlled buy. Hanna called Robinson and Robinson directed her to a local McDonalds. At the McDonalds, Hanna called Robinson inquiring as to who she would be meeting. Robinson replied, "They're on the way." *Id*. at 337. Thereafter, Marcus Koehn and Bernard Williams arrived at the McDonalds and Williams sold drugs to Hanna. Following the buy, Koehn testified Robinson picked up the pair and Williams handed Robinson a bag of drugs and money.

The State charged Robinson with two counts of aiding, inducing, or causing dealing in cocaine as Level 4 felonies ("Counts I and III"), and aiding, inducing, or causing dealing in cocaine as a Class B felony ("Count II").[2] The State also alleged Robinson to be an habitual offender. Following a trial, the jury found Robinson guilty of the offenses as charged and also found him to be an habitual offender. The trial court entered judgment of conviction accordingly and sentenced Robinson to eight years executed on Counts I and III, to be served concurrently, and sixteen years executed on Count II, to be served consecutively to Counts I and III. The trial court also sentenced Robinson to twelve years for the habitual offender enhancement. In sum, the trial court sentenced Robinson to thirty-six years executed in the Indiana

---

[2] Robinson committed the offenses before and after the criminal statutes changed on July 1, 2014.

Department of Correction.[3]  This appeal ensued.  Additional facts will be added as necessary.

# Discussion and Decision

## I.  Sufficiency of the Evidence[4]

### A.  Standard of Review

[7]  In reviewing the sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge the credibility of witnesses.  *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015).  We consider only the evidence supporting the judgment and any reasonable inferences drawn therefrom.  *Id*.  We will affirm the conviction "if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have

---

[3] The trial court sentenced Robinson to an additional five years executed after revoking Robinson's probation in a separate cause.  We note, however, this portion of Robinson's sentence is not reviewable under Indiana Appellate Rule 7(B).  *See Jones v. State*, 885 N.E.2d 1286, 1290 (Ind. 2008) ("A trial court's action in a post-sentence probation violation proceeding is not a criminal sentence as contemplated by the rule.").  We therefore will only address Robinson's sentence of thirty-six years executed.

[4] At the conclusion of the State's case, Robinson moved for directed verdict, arguing the State failed to present sufficient evidence.  The trial court denied Robinson's motion and Robinson immediately rested, opting not to present any evidence.  On appeal, Robinson argues the trial court erred in denying his motion for a directed verdict, or in the alternative, the State failed to present sufficient evidence to sustain his convictions.  We note, however, a trial court does not err in denying a motion for a directed verdict if the evidence is sufficient to support a conviction.  *Huber v. State*, 805 N.E.2d 887, 890 (Ind. Ct. App. 2004).  As a result, we review a trial court's denial of a motion for directed verdict using essentially the same standard as for a challenge to the sufficiency of evidence.  *Edwards v. State*, 862 N.E.2d 1254, 1262 (Ind. Ct. App. 2007), *trans. denied*.  Given the fact neither the State nor Robinson presented evidence after the trial court denied Robinson's motion for a directed verdict, coupled with the similar standards of review, we opt to address only whether the State presented sufficient evidence to sustain his convictions.

found the defendant guilty beyond a reasonable doubt." *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013) (citation omitted).

## B. Aiding, Inducing, or Causing Dealing in Cocaine

[8] A person who knowingly or intentionally aids, induces, or causes another person to deliver cocaine commits dealing in cocaine. Ind. Code § 35-41-2-4 (aiding, inducing, or causing an offense); Ind. Code § 35-48-4-1(a)(1)(C) (dealing in cocaine) (2014 and current version).[5] From what we can gather, Robinson argues the evidence is insufficient to establish he aided, induced, or caused dealing in cocaine. In support, he first asserts the only evidence supporting his conviction came from witnesses who lacked credibility. He claims the witnesses were drug addicts, the witnesses were facing significant penalties for their criminal actions prior to Robinson's arrest, and each of the witnesses' plea agreements contained a clause stating they must cooperate with the State by testifying against Robinson at trial.[6] Such an argument invites us to reassess witness credibility, which we will not do. *Willis*, 27 N.E.3d at 1066.

---

[5] The offense is elevated from a Level 5 felony to a Level 4 felony if the amount of cocaine involved is less than one gram and an enhancing circumstance applies, which the State alleged on Counts I and III. Ind. Code § 35-48-4-1(c)(2). On appeal, Robinson does not challenge his convictions on Counts I and III on the basis the State failed to prove the amount of cocaine involved in the controlled buys was less than one gram or that an enhancing circumstance applies.

[6] To the extent Robinson argues witnesses at trial were incredibly dubious, we note such an argument is waived for failure to present a cogent argument. *See* Ind. Appellate Rule 46; *Page v. State*, 706 N.E.2d 230, 233 (Ind. Ct. App. 1990).

[9] Robinson also asserts the evidence is insufficient because Hanna and Arnett were "not thoroughly checked for the possession of illegal drugs and/or money before the controlled buys." Appellant's Brief at 21. We have previously described a controlled buy as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Vaughn v. State*, 13 N.E.3d 873, 888 (Ind. Ct. App. 2014) (emphasis omitted) (quoting *Ross v. State*, 908 N.E.2d 626, 630 (Ind. Ct. App. 2009)), *trans. denied*. "A pat-down search of the CI or buyer is sufficient, and a strip search or complete cavity search is not necessary." *Id*.

[10] At the outset, we note Robinson fails to cite to any portions of the record in support of his assertion. Nonetheless, the evidence indicates law enforcement searched Hanna's and Arnett's person prior to each of the controlled buys. During the controlled buys where a motor vehicle was used, law enforcement also searched the vehicles. Thereafter, law enforcement equipped Hanna and Arnett with a recording device and followed them to the locations of the controlled buys. Immediately following the buys, law enforcement reconvened with Hanna and Arnett, seized the cocaine, and again searched Hanna's and

Arnett's person and vehicles. In searching Hanna, Arnett, and their vehicles before and after the controlled buys, law enforcement did not discover any additional drugs. Robinson's argument fails.

[11] In any event, Hanna and Arnett each testified they previously purchased drugs from Robinson on many occasions, Robinson often sent someone else to deliver the drugs, and on the days of the controlled buys, Hanna and Arnett called Robinson and ordered drugs from him. Dunham testified she was Robinson's drug runner and he sent her to deliver cocaine to Hanna on June 27, 2014. Koehn testified Williams delivered cocaine to Arnett on July 15, 2014, and when Robinson later picked them up, Williams gave Robinson drugs and money. Connor, Robinson's girlfriend, testified Robinson sent her to deliver cocaine to Hanna on July 16, 2014. The evidence firmly establishes Robinson aided, induced, or caused dealing in cocaine. We conclude the State presented sufficient evidence to sustain Robinson's convictions.

## II. Inappropriate Sentence[7]

[12] Indiana Appellate Rule 7(B) provides, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense

---

[7] Although Robinson only specifically challenges his sentence under Indiana Appellate Rule 7(B), he appears to also argue his sentence is inappropriate because the trial court erred in finding and not finding certain aggravating and mitigating circumstances. However, Robinson neither cites to any portions of the record nor any case law in support of his assertions. Therefore, to the extent Robinson intended to separately argue the trial court abused its discretion in sentencing him, such an argument is waived for failure to present a cogent argument. *See* Ind. Appellate R. 46; *Page*, 706 N.E.2d at 233.

and the character of the offender." The defendant bears the burden of persuading this court his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Whether we regard a sentence as inappropriate turns on "the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to "leaven the outliers," not achieve the perceived "correct" result in each case. *Id*. at 1225.

[13] The advisory sentence is the starting point the legislature selected as an appropriate sentence for the crime committed. The trial court entered judgment of conviction on Count II as a Class B felony and Counts I and III as Level 4 felonies. A person who commits a Class B felony shall be imprisoned for a fixed term of between six and twenty years, with the advisory sentence being ten years. Ind. Code § 35-50-2-5(a). A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two and twelve years, with the advisory sentence being six years. Ind. Code § 35-50-2-5.5. The trial court sentenced Robinson to eight years on Counts I and III, to be served concurrently with each other and consecutive to sixteen years on Count II. The trial court also enhanced Robinson's sentence on Count II by twelve years because Robinson is an habitual offender. In sum, the trial court sentenced Robinson to thirty-six years executed in the Department of Correction.

[14] As to the nature of the offense, we note nothing exceptional about the facts or circumstances, but Robinson himself concedes his offenses are severe. *See*

Appellant's Br. at 19. As to his character, Robinson's criminal history is extensive. Robinson has previously been arrested on at least thirty separate occasions and convicted of dealing in cocaine and delivery of a controlled substance. At the time he committed the alleged offense, Robinson was serving probation for dealing in cocaine, which evidences his disregard for the law and inability or unwillingness to capitalize on a more lenient sentence. We further note Robinson attempted to tamper with law enforcement's investigation into him by trying to persuade Connor to not testify against him, and when that failed, to lie on the witness stand. We conclude Robinson's sentence of thirty-six years executed in the Department of Correction is not inappropriate.

## Conclusion

[15] We conclude the evidence is sufficient to sustain Robinson's convictions and Robinson's sentence is not inappropriate in light of the nature of the offenses and his character. Accordingly, we affirm his convictions and sentence.

[16] Affirmed.

Kirsch, J., and Barnes, J., concur.