Brian ROSS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 33A05–0901–CR–006.

Court of Appeals of Indiana.

June 17, 2009.

Mark I. Cox, The Mark I. Cox Law Office, LLC, Richmond, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Kelly A. Miklos, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Brian Ross appeals his conviction for class D felony maintaining a common nuisance [1] and his convictions and sentences for two counts of class A felony dealing in cocaine.[2]

We affirm.

---

1. Ind.Code § 35–48–4–13.

2. I.C. § 35–48–4–1.

*ISSUES*

1. Whether the evidence was sufficient to support Ross's convictions.

2. Whether Ross's sentence is inappropriate pursuant to Indiana Appellate Rule 7(B).

*FACTS*

While conducting narcotic-related investigations with the Henry County Area Drug Task Force, New Castle Police Department Detective Sergeant Aaron Strong began working with a confidential informant, identified as Confidential Informant 200821 (the "CI"), in February of 2008. Over a period of approximately two months, the CI made "sixty to ninety" drug buys under Detective Strong's supervision, resulting in "six to nine" convictions. (Tr. 80).

At approximately 6:00 p.m. on February 15, 2008, the CI telephoned Detective Strong. Based on the information he received from the CI, Detective Strong decided to conduct a controlled drug buy from Ross. He arranged for assistance from Henry County Sheriff's Department Detective Josh Smith and New Castle Police Department Detective Lieutenant James Cantrell.

At approximately 7:35 p.m., Detective Strong picked up the CI at the CI's residence. Detective Strong conducted a strip search of the CI in his unmarked police vehicle to confirm that the CI had no illegal contraband or narcotics on his person. He therefore confirmed that the CI's pockets were empty and took control of the CI's cell phone. The CI then removed his shoes, socks, and shirt. He also pulled down his pants and boxer shorts, which he shook to confirm that nothing was hidden in them. As it was evening, Detective Strong used his vehicle's overhead dome light to illuminate the interior of the vehicle.

Detective Strong then drove the CI to a local shopping plaza, where Detective Strong briefed Detectives Smith and Cantrell. He also provided the CI with $100.00 and equipped the CI with a hidden audio and video recorder, with which the officers could monitor the transaction.

At approximately 8:00 p.m., the detectives and the CI drove to the New Castle Inn, where the CI had arranged to meet Ross. Detective Strong parked three doors down from the room where the controlled buy was to take place and observed the CI enter the motel room. Detectives Smith and Cantrell monitored the CI using the video and audio signals being transmitted by the recorder.

The CI left the motel room approximately one minute later and returned to Detective Strong's vehicle, where he handed Detective Strong a plastic baggie containing a white substance. They then drove to another location, where Detective Strong conducted a second search of the CI. Detective Strong later verified that the motel room had only one entrance.

On the night of February 19, 2008, Detective Strong again made preparations for another controlled buy from Ross. He again performed a strip search of the CI in the police vehicle, using the dome light for illumination. The CI emptied his pockets, and then removed his shoes, socks, sweatshirt, and tee shirt. He also pulled down his pants and boxer shorts, which he shook out "to make sure he had nothing concealed in his boxers." (Tr. 140). Detective Strong confirmed that the CI did not have anything with him or on his body.

Detective Strong next gave the CI $50.00 and outfitted him with an audio and video recorder. After briefing Detectives Smith and Cantrell, they proceeded to the New Castle Inn.

Detective Strong observed the CI go into one of the rooms. As the CI exited the room shortly thereafter, Detective Strong observed Ross lean out of the doorway and look in his direction. The CI returned to Detective Strong's vehicle and gave him a plastic baggie containing a white substance. Detective Strong then performed another search of the CI. He later verified that the motel room had only one entrance.

Tests conducted at the Indiana State Police Laboratory revealed that the substances given to Detective Strong by the CI on February 15 and 19 consisted of 1.05 and .46 grams of cocaine, respectively.

On March 3, 2008, the State charged Ross with Count 1, class A felony dealing in cocaine; Count 2, class A felony dealing in cocaine; and Count 3, class D felony maintaining a common nuisance. The trial court commenced a two-day jury trial on October 28, 2008.

The jury heard testimony of the foregoing facts. Furthermore, the trial court admitted the video recordings made on February 15 and 19 into evidence.[3] It also admitted into evidence still photographs taken from the video recordings. The photographs show Ross and the CI in a motel room. Ross appears to be handing or receiving something from the CI. In addition, one photograph depicts a white female sitting on a bed; however, it does not show the CI interacting with the woman. The jury found Ross guilty as charged.

The trial court ordered a pre-sentence investigation report ("PSI") and held a sentencing hearing on December 10, 2008.

According to Ross's PSI,[4] he had two prior misdemeanor convictions in 1995 for operating a vehicle while intoxicated and public intoxication. He also had a conviction for class C felony burglary in 2002 for which he was placed on probation for two years. His probation was revoked in 2003; Ross, however, eventually completed his probation in 2004. Ross also had a case pending in Henry Superior Court, filed on March 10, 2008, in which he was charged with one count of class A felony dealing in cocaine and one count of class D felony maintaining a common nuisance.

On both Counts 1 and 2, the trial court sentenced Ross to thirty-five years with seven years suspended. On Count 3, the trial court sentenced him to two years. The trial court ordered that the sentences on Counts 2 and 3 be served concurrently with sentence on Count 1.

## DECISION

### 1. Sufficiency of the Evidence

Ross asserts that the evidence is insufficient to support his convictions for dealing in cocaine and maintaining common nuisance.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflict-

---

3. The trial court granted Ross's motion to suppress the audio recordings as the CI, having died prior to trial, was unavailable to testify.

4. We remind Ross's counsel that presentence investigation reports shall be "tendered on light green paper" or have a light green coversheet attached to the document, marked "Not for Public Access" or "Confidential." Ind. Trial Rule 5(G)(1).

ing evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder *could* find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind.2007) (quotations and citations omitted).

### a. *Dealing in cocaine*

■ Ross contends that the evidence was insufficient to support his convictions for dealing in cocaine. Pursuant to Indiana Code section 35–48–4–1, the State was required to prove that Ross knowingly or intentionally delivered cocaine to the CI. Furthermore, the State had to show that Ross possessed the cocaine before the buy and transferred it to the CI. *See* I.C. § 35–48–1–11 ("Delivery" is defined as "an actual or constructive transfer from one (1) person to another of a controlled substance. . . .").

Ross argues that the police officers did not maintain sufficient control over the drug buy because 1) Detective Strong searched the CI in his police vehicle; 2) Detective Strong conducted the search at night and with only an interior light to illuminate the vehicle; 3) the CI did not testify at trial; 4) the police officers did not confiscate the money used to buy the cocaine from Ross; and 5) the police officers did not search the motel rooms either before or after the drug buys. Accordingly, he maintains that the State failed to prove that he possessed the cocaine before the buy and transferred it to the CI.

■ "A properly conducted controlled buy will permit an inference the defendant had prior possession of a controlled substance." *Watson v. State*, 839 N.E.2d 1291, 1293 (Ind.Ct.App.2005).

"A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction."

*Id.* (quoting *Mills v. State*, 177 Ind.App. 432, 379 N.E.2d 1023, 1026 (1978)).

In *Watson*, the State charged Watson with dealing in cocaine after a confidential informant purchased cocaine from him. This Court determined that where the confidential informant did not testify against Watson at trial, and the police officers failed to conduct a pre-buy search, the jury was left to speculate as to whether Watson or the confidential informant initially had the cocaine. However, "had the CI testified *or* had she been properly searched before the buy, the jury would have had a reasonable basis for believing Watson had the cocaine before the buy." *Id.* at 1294 (emphasis added).

In this case, Detective Strong testified that he observed the CI enter the motel rooms and that police officers were able to monitor the CI once he entered the motel rooms with an audio and video recording device, both of which recorded the transactions between Ross and the CI. Thus, the motel rooms and the CI were under constant and complete surveillance.

Detective Strong further testified that searches of the CI's person and clothing confirmed that he did not possess any controlled substance prior to meeting with Ross; in fact, other than the cash given to him to make the buy, the CI did not have any items on his person before entering the motel rooms. Upon his return to Detective Strong's vehicle, however, the CI had plastic baggies containing cocaine.

Despite the CI not testifying at trial, we find the evidence sufficient to support Ross's convictions for dealing in cocaine. Ross's argument to the contrary amounts to an invitation to reweigh the evidence, which we will not do.

b. *Maintaining a common nuisance*

■ Ross further asserts that the evidence was insufficient to sustain his conviction for maintaining a common nuisance. Ross argues that "[t]here was no evidence that [he] rented a room at the New Castle Inn"; the two drug buys occurred in two different rooms; cocaine was never seen in the rooms; and he "was not the only person in these rooms." Ross's Br. at 16.

■ Pursuant to Indiana Code section 35–48–4–13, the State was required to prove that Ross knowingly or intentionally maintained a place that was used one or more times for selling a controlled substance. In order to maintain a place, one must have control over it. *See Jones v. State*, 807 N.E.2d 58, 66 (Ind.Ct.App.2004), *trans. denied.*

In cases where the accused has exclusive possession of the premises on which the contraband is found, an inference is permitted that he or she knew of the presence of contraband and was capable of controlling it. However, when possession of the premises is non-exclusive, the inference is not permitted absent some additional circumstances indicating knowledge of the presence of the contraband and the ability to control it. Among the recognized "additional circumstances" are: (1) incriminating statements by the defendant; (2) attempted flight or furtive gestures; (3) a drug manufacturing setting; (4) proximity of the defendant to the contraband; (5) contraband is in plain view; and (6) location of the contraband is in close proximity to items owned by the defendant.

*Holmes v. State*, 785 N.E.2d 658, 660–61 (Ind.Ct.App.2003) (citations omitted). "These circumstances apply to show constructive possession even where the defendant is only a visitor to the premises where the contraband is found." *Collins v. State*, 822 N.E.2d 214, 222 (Ind.Ct.App. 2005) (citing *Ledcke v. State*, 260 Ind. 382, 296 N.E.2d 412, 416 (1973)), *trans. denied.*

■ It appears that on at least one occasion, Ross arguably may not have exercised exclusive control of the motel rooms. Thus, the State was required to present evidence of additional circumstances indicating his knowledge of the presence of the cocaine and his ability to control it.

We find that the jury could reasonably infer that Ross had knowledge and control over the cocaine where the evidence shows that, on two occasions, the CI did not have any controlled substance on his person before meeting with Ross; the CI was under surveillance; the CI did not interact with anyone other than Ross; and the CI subsequently returned with cocaine after meeting with Ross. Accordingly, the evidence of additional circumstances is sufficient to prove that Ross maintained a place where he sold cocaine more than one time.

2. *Inappropriate Sentence*

■ Ross asserts that his concurrent sentences of thirty-five years with seven years suspended for the class A felony

dealing in cocaine convictions are inappropriate. We may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). It is the defendant's burden to " 'persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review.' " *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind.2007) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind.2006)), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

In determining whether a sentence is inappropriate, the advisory sentence "is the starting point the Legislature has selected as an appropriate sentence for the crime committed." *Childress*, 848 N.E.2d at 1081. In this case, the trial court sentenced Ross to thirty-five years with seven years suspended for each class A felony conviction, to be served concurrently. The advisory sentence for a class A felony is thirty years. *See* I.C. § 35-50-2-4.[5]

Ross's criminal history, though not extensive, does include two alcohol-related misdemeanor convictions as well as a felony conviction for burglary. Moreover, his PSI reveals that charges were pending against him in another court for class A felony dealing in cocaine and class D felony maintaining a common nuisance at the time of sentencing in this case. We therefore conclude that the sentence imposed by the trial court was not inappropriate.

Affirmed.

BAILEY, J., and ROBB, J., concur.

---

5. Pursuant to Indiana Code section 35–50–2–4, "[a] person who commits a Class A felony shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years."