# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**KIMBERLY A. JACKSON**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

**FILED**

Jul 15 2014, 10:15 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTONIO L. VAUGHN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 84A01-1302-CR-57 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable Michael Rader, Judge
Cause No. 84D05-1204-FA-1281

**July 15, 2014**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Antonio L. Vaughn was convicted after a jury trial of two counts of dealing in cocaine,[1] each as a Class A felony, and one count of maintaining a common nuisance,[2] a Class D felony, and was sentenced to an aggregate term of forty years with twenty years suspended and twenty years executed. He appeals, raising the following restated issues for our review:

I.      Whether the trial court abused its discretion when it admitted videos of the controlled drug buys, still photographs from the videos, recordings of telephone calls arranging the buys, and statements made by the confidential informant ("the CI") because such evidence violated Vaughn's right to confront witnesses under the Sixth Amendment as the CI did not testify;

II.     Whether the trial court abused its discretion in admitting the cocaine, the chain of custody report, and testimony by the lead officer;

III.    Whether the trial court abused its discretion in instructing the jury regarding the presumption of innocence, the burden of proof, Vaughn's decision not to testify, and the jury's right to decide the law and the facts;

IV.     Whether sufficient evidence was presented to support Vaughn's convictions; and

V.      Whether the trial court abused its discretion when it sentenced Vaughn.

We affirm and remand with instructions.

## FACTS AND PROCEDURAL HISTORY

On February 28, 2012, the CI contacted Detective Martin Dooley of the Terre Haute Police Department Drug Task Force about performing a controlled buy of narcotics from

---

[1] *See* Ind. Code § 35-48-4-1.

[2] *See* Ind. Code § 35-48-4-13(b).

Vaughn. Detective Dooley set up a time and place for the CI to meet him, and the two met at the prearranged location. Detective Dooley searched the CI, including his pockets, jacket, shirt, pants, shoes, socks, mouth, ears, and any place where narcotics could have been hidden. The detective also had the CI pull his underwear out from his body and shake them to ensure there was nothing hidden inside.

Detective Dooley had the CI make a telephone call to Vaughn, and the CI and Vaughn discussed where to meet. The detective drove the CI to the agreed-upon location and gave the CI $100 in cash and outfitted him with an audio/visual recording device. The CI exited the vehicle and walked to Vaughn's apartment building, where the CI met Vaughn and handed him the money. Vaughn walked inside the apartment building, came back outside with his hand cupped, met the CI, and the two engaged in a hand-to-hand exchange. The CI then walked back to the police vehicle where he was again searched, and Detective Dooley retrieved a substance that was later identified as crack cocaine from the CI. During this controlled buy, the officers involved watched the CI and confirmed that he did not have any contact with anyone else other than Vaughn.

On March 1, 2012, the CI again contacted Detective Dooley about performing another controlled buy from Vaughn. Detective Dooley proceeded in the same manner as before: the officer arranged a meeting place with the CI, Detective Dooley searched the CI, the CI called Vaughn to set up the transaction, the officers gave the CI $100 in cash, and they placed a recording device on the CI. The officers drove the CI to near Vaughn's apartment building, and the CI exited the vehicle and walked towards Vaughn's apartment. The CI stood outside of the building, and Vaughn pulled up in a green van. The CI entered

3

the van, the van drove around the block, and the CI exited approximately one minute later. The CI walked back to the officers' vehicle, where he was again searched, and gave the officers a substance that was later identified as crack cocaine. During this controlled buy, the officers maintained visual contact with the CI, except for the time that he was inside of the van, and the CI did not come into contact with any other person besides Vaughn.

After each of the controlled buys, Detective Dooley retrieved the cocaine from the CI. Detective Dooley field tested the substance and placed it in a sealed bag; he then placed the sealed bag in the Terre Haute Police Department's evidence locker. The cocaine was later sent to the Indiana State Police ("ISP") Laboratory and placed in the ISP's secured evidence vault. ISP forensic scientist Brandy Cline requested that an evidence clerk remove the cocaine from the evidence vault. When she received the evidence, Cline first checked to make sure the contents matched the description. She stated she would not accept evidence that was not sealed. Cline tested the evidence, and both samples tested positive for cocaine, one weighing 0.64 grams and one weighing 0.42 grams. *Trial Tr.* 398, 402.

The State charged Vaughn with two counts of Class A felony dealing in cocaine and one count of Class D felony maintaining a common nuisance. At trial, Vaughn objected to the jury instructions regarding the presumption of innocence, the explanation of the State's burden of proof, his decision not to testify, and the jury's right to decide the law and the facts. All of his objections were overruled. At the conclusion of the trial, Vaughn was found guilty as charged. The trial court sentenced Vaughn to forty years for each of his dealing in cocaine convictions and three years for his maintaining a common nuisance

4

conviction, with the sentences to run concurrently with each other, for an aggregate sentence of forty years. Vaughn was ordered to serve twenty years executed in the Department of Correction, and twenty years was suspended to probation. Vaughn now appeals.

## DISCUSSION AND DECISION

### I. Confrontation Clause

Generally, we review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones v. State*, 982 N.E.2d 417, 421 (Ind. Ct. App. 2013), *trans. denied* (citing *Noojin v. State,* 730 N.E.2d 672, 676 (Ind. 2000)). We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id.* Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id*.

Vaughn argues that the trial court abused its discretion when it admitted into evidence at trial videos of the controlled buys, still photographs taken from the videos, recordings of the telephone calls made to Vaughn to set up the transactions, and statements from the recordings. He contends that all of this evidence was inadmissible and highly prejudicial hearsay. Vaughn further claims that, because the CI did not testify at trial, the admission of this evidence violated Vaughn's right to confront witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution and his right to a fair trial under the Due Process Clause.

The Confrontation Clause is embodied in the Sixth Amendment to the United States Constitution and prohibits the admission of an out-of-court statement if it is testimonial,

5

the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the declarant. *Lane v. State*, 997 N.E.2d 83, 92 (Ind. Ct. App. 2013) (citing *King v. State,* 985 N.E.2d 755 (Ind. Ct. App. 2013), *trans. denied*), *trans. denied*. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Williams v. State*, 930 N.E.2d 602, 607 (Ind. Ct. App. 2010) (quoting *Crawford v. Washington,* 541 U.S. 36, 59 n.9 (2004)), *trans. denied*. Therefore, if a statement is either nontestimonial or nonhearsay, the federal Confrontation Clause will not bar its admissibility at trial. *Id*. at 607-08. Hearsay is a statement, not made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Statements not admitted to prove the truth of the matter are not hearsay and do not run afoul of the hearsay rule. *Williams*, 930 N.E.2d at 608 n.3. It has previously been held by this court that statements made by a CI recorded in the course of a controlled drug buy were not offered by the State to prove the truth of the matter asserted and were, therefore, not hearsay. *Id*. at 608; *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*. This court reasoned that the statements were not hearsay because they were "'largely designed to prompt'" the defendant to speak and, as such, it was the statements made by the defendant "'that really constituted the evidentiary weight of the conversation.'" *Williams*, 930 N.E.2d at 608 (quoting *Lehman*, 926 N.E.2d at 38).

Here, at trial, the trial court admitted two videos of the drug transactions between the CI and Vaughn taken by the hidden recording device that the CI wore and still photographs taken from the videos of the transactions. In *Pritchard v. State*, 810 N.E.2d

758 (Ind. Ct. App. 2004), it was held that a video recording from a prison surveillance camera showing the defendant entering a cell, running from it, and throwing something into the shower area was not intended to be an assertion within the meaning of our rules of evidence and, therefore, was not hearsay. *Id*. at 761. Likewise, in the present case, the videos and the still photographs showing the controlled drug buy between the CI and Vaughn were not meant to be an assertion. They merely showed the conduct of the CI and Vaughn. Additionally, any testimony regarding the videos by Detective Dooley was not hearsay because it was testimony based on the detective's personal observation and did not relay an out-of-court statement. Under Indiana Evidence Rule 602, witnesses can testify to things that are within their personal knowledge.

The trial court also admitted audio recordings of the telephone calls placed by the CI to Vaughn to discuss where to meet. These recordings did not constitute hearsay. Any statement made by Vaughn on the recordings were not hearsay because they were statements by a party-opponent. Evid. R. 801(d)(2)(A). Any statements made by the CI on the recording were merely designed to prompt Vaughn to speak and were not offered for the truth of the matter asserted. *See Williams*, 930 N.E.2d at 608 (finding recorded statements during controlled drug buys not hearsay because not offered for the truth of the CI's statements).

As previously explained, the Confrontation Clause does not prohibit the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Id*. at 607. Thus, if a statement is either nontestimonial or nonhearsay, its admissibility is not barred by the Confrontation Clause. *Id*. at 607-08. Because, here, we have determined

7

that none of the evidence objected to by Vaughn was hearsay, the admission of such evidence was not barred by the Confrontation Clause. We conclude that the trial court did not abuse its discretion in admitting the videos of the controlled drug buy, the still photographs taken from the videos, the audio recordings of the telephone calls to set up the controlled drug buys, and the testimony of Detective Dooley regarding the videos, photographs, and audio recordings.

Vaughn also argues that the trial court's restrictions on his introduction of evidence of the CI's bias violated the Confrontation Clause and his right to present a defense pursuant to the Due Process Clause. He contends that he should have been afforded the opportunity to test the believability of the State's witnesses and to show bias, prejudice, or ulterior motives on the part of the CI. However, Vaughn did elicit testimony from Detective Dooley that the CI was paid for participating in the controlled drug buys, the CI had been convicted of possession of cocaine on at least one prior occasion, and confidential informants tend to be deceptive people. *Trial Tr.* at 295, 298, 299. Vaughn was, therefore, allowed to question Detective Dooley about the CI's credibility. Further, Vaughn's right of confrontation was not violated because the CI did not testify against him and, as we have determined above, did not make any testimonial or hearsay statements against Vaughn that were admitted at trial.

## II.  Admission of Evidence

We review the trial court's ruling on the admission of evidence for an abuse of discretion. *Jones*, 982 N.E.2d at 421. We will reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. Even if the trial court's

8

decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Id.*

Vaughn argues that the trial court abused its discretion when it admitted the cocaine purchased by the CI from Vaughn because the State failed to establish a chain of custody for that evidence. He also contends that the trial court abused its discretion in admitting a chain of custody report as a business record because it did not meet the requirements of the business records exception to the hearsay rule. Vaughn claims it was further error to admit the chain of custody report because it was not disclosed to him prior to its introduction. He lastly asserts that it was an abuse of discretion to admit Detective Dooley's opinion testimony because the State had failed to disclose the opinion testimony as ordered in a pretrial order.

Vaughn alleges that State's Exhibit 10, one of the chain of custody reports, was inadmissible because it did not meet the requirements of the business records exception. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(c). Hearsay is not admissible unless it falls within one of the exceptions provided in the evidence rules. Evid. R. 802. The business records exception to the hearsay rule states, in pertinent part:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the

9

custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Evid. R. 803(6). "'To admit business records pursuant to this exception, the proponent of the exhibit may authenticate it by calling a witness who has a functional understanding of the record-keeping process of the business with respect to the specific entry, transaction, or declaration contained in the document.'" *Houston v. State*, 957 N.E.2d 654, 658 (Ind. Ct. App. 2011) (quoting *Rolland v. State,* 851 N.E.2d 1042, 1045 (Ind. Ct. App. 2006)), *trans. denied*. The witness need not have personally made or filed the record or have firsthand knowledge of the transaction represented by it in order to sponsor the exhibit. *Id.*

Vaughn contends that the State failed to present any evidence that "the person who entered the record had any personal knowledge of the transaction represented at the time of entry." *Appellant's Br*. at 24. Detective Dooley was the sponsoring witness of State's Exhibit 10 and testified that the document was made in the ordinary course of business for the Terre Haute Police Department and that the entries on the document were made at or near the time of the transaction by "one of the record[s] ladies" who were authorized by the Terre Haute Police Department to make the entries and had personal knowledge of the transaction. *Trial Tr*. at 276-79. Therefore, the chain of custody report was admissible as a business record.

Vaughn next claims that the chain of custody report should not have been admitted because it constituted a police investigative record, which is only admissible if offered by the defense. Under Indiana Evidence Rule 803(8), the public records exception to the hearsay rule, a document must contain factual findings to qualify as a public record, but if

10

that public record is a police investigative report, it is inadmissible unless offered by the defense. Evid. R. 803(8)(A)(i)(c), (B)(i). These factual findings required to qualify as a public record must address a materially contested issue in the case, and if they do not, then the document would not be inadmissible as a police investigative report. *Rhone v. State*, 825 N.E.2d 1277, 1283 (Ind. Ct. App. 2005), *trans. denied*. Here, the report in question does not contain any factual findings that address a materially contested issue in the case nor any factual findings at all. State's Exhibit 10 was merely a record of the time and location of the evidence at issue and never referred to the evidence as cocaine, but only as a "rock like substance." *State's Ex*. 10. Thus, the exhibit was not rendered inadmissible as a police investigative report. The trial court did not abuse its discretion in admitting State's Exhibit 10.

Vaughn next argues that the State failed to show sufficient chain of custody for the cocaine that was purchased during the controlled buys. "The State is required to show a chain of custody for the purpose of showing the unlikelihood of tampering, loss, substitution or mistake." *McCotry v. State*, 722 N.E.2d 1265, 1267 (Ind. Ct. App. 2000) (citing *Price v. State,* 619 N.E.2d 582, 583 (Ind. 1993)), *trans. denied.* To show a chain of custody, the State need only provide a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next. *Id*. (citing *Kennedy v. State,* 578 N.E.2d 633, 639 (Ind. 1991), *cert. denied,* 503 U.S. 921 (1992)). If the State presents evidence that strongly suggests the exact whereabouts of the evidence at all times, that is sufficient. *Id.*

In order to challenge the adequacy of the chain of custody, a defendant must present evidence that does more than raise a mere possibility that the evidence could have been tampered with. *Id.* Any gaps in the chain of custody go to the weight of the evidence, and not to its admissibility. *Id.* Further, when the evidence is handled by public officers, there is a presumption that they use due care and that the evidence is handled with regularity. *Id.*

In the present case, Detective Dooley testified that he retrieved the cocaine from the CI when the CI returned to the car after the controlled buy. *Trial Tr*. at 215. Detective Dooley then field-tested the cocaine at his desk, placed it in a sealed bag, and placed the sealed bag in the Terre Haute Police Department's evidence locker. *Id*. at 243, 335. The cocaine was then sent to the ISP Laboratory and placed in the secured evidence vault there. *Id*. at 335, 399. ISP forensic scientist Cline testified that she asked an evidence clerk to remove the cocaine from the secured vault, and once she received it, she checked to ensure the contents matched the description. *Id*. at 397. Cline testified that she would not accept evidence that was not in a sealed condition when she received it. *Id.* State's Exhibit 10 showed the cocaine being in the Terre Haute Police Department's property locker on February 28, 2012 and being moved to the Terre Haute Police Department's "drug room" on February 29, 2012. *State's Ex*. 10. State's Exhibit 12 showed the cocaine going from the Terre Haute Police Department to the ISP Laboratory on June 21, 2012 and going back to the Terre Haute Police Department from the ISP Laboratory on July 30, 2012. *State's Ex*. 12. This evidence provided a reasonable assurance that the evidence was undisturbed as it passed from the custody of one person to the next and strongly suggested the exact

12

whereabouts of the evidence at all times. It was therefore sufficient to establish the chain of custody.

Vaughn's argument regarding alleged gaps in the chain of custody goes to the weight of the evidence, and not to its admissibility. *McCotry*, 722 N.E.2d at 1267. Further, when the evidence is handled by public officers, there is a presumption that they use due care and that the evidence is handled with regularity. *Id.* Additionally, Vaughn's argument that a tear in the plastic bag of State's Exhibit 4, one of the samples of cocaine, demonstrated that it was tampered with, is to no avail. The testimony at trial showed that what appeared to be a tear was actually above the seal and that a piece of tape was placed on it to reinforce it. *Trial Tr.* at 321-22. The trial court went on to say, "I think by agreeing, we're agreeing that [the] bag is still sealed." *Id*. at 322. Cline also testified that she would not have accepted evidence that was not sealed. *Id*. at 397. The State sufficiently established the chain of custody for the cocaine. Therefore, the cocaine was properly admitted into evidence.

Lastly, Vaughn contends that the trial court abused its discretion in admitting opinion testimony of Detective Dooley. After Vaughn filed a motion requesting that all opinion testimony be disclosed prior to trial, the trial court issued an order that the State provide Vaughn all opinion evidence it planned to introduce. Vaughn asserts that certain testimony by Detective Dooley violated this order because it constituted opinion testimony not previously disclosed to Vaughn.

Here, Detective Dooley testified that he did not see the CI come into contact with any other person besides Vaughn, and therefore, the CI could not have obtained the cocaine

13

from anyone else other than Vaughn. *Trial Tr.* at 227, 229. Vaughn also takes issue with testimony by Detective Dooley that he saw the CI hand the $100 buy money to Vaughn, and that Vaughn entered the apartment building and returned with his hand cupped. *Id.* at 281. Detective Dooley then testified that he observed Vaughn and the CI meet on the stairway and do a "hand to hand transaction," which was "[w]hen somebody would meet up [and] their hands would exchange narcotics." *Id.* This was not opinion testimony that violated the pretrial order; this was testimony regarding direct observations of what Detective Dooley saw and inferences based upon his observation. A witness may testify to what he observed as long as it is based on his personal knowledge of the matter. *Steen v. State*, 987 N.E.2d 159, 162-63 (Ind. Ct. App. 2013) (citing Evid. R. 602), *trans. denied.*

Vaughn also argues that the testimony in question by Detective Dooley was inadmissible because it constituted improper commentary on the February 28, 2012 controlled buy. However, in both instances of testimony that Vaughn takes issue with, Detective Dooley is not describing or discussing the video; he is testifying to what he actually observed during the controlled buy between the CI and Vaughn. We conclude that the trial court did not abuse its discretion when it admitted this testimony by Detective Dooley.

### III. Jury Instructions

Vaughn argues that the trial court abused its discretion in instructing the jury regarding the jury's duty in assessing testimony, the State's burden of proof, Vaughn's decision not to testify, and the jury's right to decide the law and the facts. We review a trial court's decision to give or refuse a tendered instruction for an abuse of discretion.

14

*Matheny v. State*, 983 N.E.2d 672, 679 (Ind. Ct. App. 2013), *trans. denied*. "Jury instructions are to be considered as a whole and in reference to each other, and we will not reverse the trial court's decision as an abuse of discretion unless the instructions as a whole mislead the jury as to the law of the case." *Walls v. State*, 993 N.E.2d 262, 268 (Ind. Ct. App. 2013), *trans. denied*. When reviewing the trial court's decision, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. *Matheny*, 983 N.E.2d at 679 (citing *O'Connell v. State,* 970 N.E.2d 168, 172 (Ind. Ct. App. 2012) (quoting *Munford v. State,* 923 N.E.2d 11, 14 (Ind. Ct. App. 2010))). A defendant is entitled to a reversal if he affirmatively demonstrates that the instructional error prejudiced his substantial rights. *Id*. (citing *Buckner v. State,* 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006)).

Vaughn first argues that the trial court abused its discretion when it gave the jury Preliminary Instruction No. 13 and Final Instruction No. 18, which both provided:

> You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe, the manner and conduct of the witness while testifying, any interest or bias or prejudice the witness may have, any relationship with other witnesses or interested parties, and the reasonableness of the testimony of the witness considered in the light of all of the evidence in this case. You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony or any witness without a reason and without careful consideration. *If you find conflicting testimony, you must determine which of the witnesses you will believe and which of them you will disbelieve.* In weighing the evidence to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact or the quantity of evidence on a particular point need not

> control your determination of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness.

*Trial Tr.* at 187-88, 556-57 (emphasis added). Vaughn contends that these instructions were given in error because they "misstate the law to the extent that they leave the jury with the impression that it must accept at least some of the conflicting testimony on an issue when it can, in fact, reject all testimony on an issue." *Appellant's Br.* at 34. He asserts that the instructions direct the jury "to 'determine which of the witnesses you believe and which of them you will disbelieve,'" but that the jury had the ability to disregard all evidence and disbelieve all witnesses. *Id.* Vaughn claims he was prejudiced by these instructions because the only witnesses who testified were State's witnesses, and therefore, the instructions directed the jury to find at least some of the State's evidence to be true where the evidence presented by the State's witnesses was conflicting.

Vaughn does not argue that the instructions given were covered by any other instructions and were not supported by the record, he merely contends that the instructions were a misstatement of the law. The instructions at issue did not compel the jury to believe the State's witnesses; when read as a whole, the instructions informed the jury that they could determine the credibility of the witnesses, could disregard testimony after careful reason and consideration, and could disbelieve witnesses. The instructions went on to explain that the number of witnesses testifying to a particular fact or the quantity of evidence on a particular point did not control the jury's determination of the truth and that the most convincing evidence should be given the greatest weight. The jury was also instructed to fit the evidence presented to the presumption that Vaughn was innocent. We

16

believe that, when read as a whole, these instructions did not misstate the law because the instructions did not lead the jury to believe it was required to wholesale adopt one witness's account over another's. The trial court did not abuse its discretion in overruling Vaughn's objection to the instructions.

Vaughn next asserts that the trial court erroneously gave the jury Final Instruction 12, which provided:

> The burden is upon the State of Indiana to prove beyond a reasonable doubt that the defendant is guilty of the crime(s) charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the defendant's guilt. But, it does not mean that a defendant's guilt must be proved beyond all possible doubt. A reasonable doubt is a fair, actual, and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the defendant's guilt, after you have weighed and considered all the evidence. A defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt. The State must prove each element of the crime(s) by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance. If you find that there is a reasonable doubt that the defendant is guilty of the crime(s), you must give the defendant the benefit of that doubt and find the defendant not guilty of the crime(s) under consideration.

*Trial Tr*. at 553-54. Vaughn claims that this instruction invaded the province of the jury with its definition of reasonable doubt and that it violated Article I, Section 19 of the Indiana Constitution by restricting the jury's definition of reasonable doubt. He refers to several other jurisdictions that have rejected instructions defining reasonable doubt because of the challenge of defining the term and requests this court to do the same. He asserts that, because of these difficulties in attempting to define reasonable doubt, the trial court

17

erred in giving Final Instruction No. 12 as it "invited confusion and invaded the province of the jury." *Appellant's Br.* at 39.

Our Supreme Court had stated that when a defendant challenges a reasonable doubt instruction, "[t]he proper constitutional inquiry "is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it."" *Winegeart v. State*, 665 N.E.2d 893, 897 (Ind. 1996) (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)). On review, we must determine whether there is a reasonable likelihood that the jury applied the instructions to convict a defendant based upon constitutionally insufficient proof of guilt. *Id.* at 897-98. Our Supreme Court has found that an instruction consisting of 300 words and eleven sentences to explain reasonable doubt was not atypical and stated, "Through the years, appellate decisions have held a wide variety of reasonable-doubt instructions to satisfy the minimal constitutional requirements." *Id.* at 898. The Supreme Court went on to state that, although "reasonable doubt" alone may suffice as other jurisdictions had found, "we are not convinced that the task [of providing effective additional explanation] is impossible in light of recent and ongoing research, and we thus prefer to endorse for use in Indiana courts a reasonable doubt instruction that reflects the wisdom of the various available resources." *Id.* at 900-01.

The instruction given by the trial court was supported by the evidence in the record and was not covered in substance by other instructions given to the jury. It was also a correct statement of law and the giving of such reasonable doubt instructions has been approved by our Supreme Court. *Id.* Although Vaughn cites to cases from federal circuit courts that have found that instructions defining reasonable doubt should not be given, this

is not the law in Indiana and we reject his invitation to follow those courts. The trial court did not abuse its discretion when it gave Final Instruction No. 12.

Vaughn also challenges the trial court's giving of Final Instruction No. 20, which provided as follows:

> Under the law of the State of Indiana, a person charged with the commission of a crime is a competent witness to testify in his or her own behalf. However, a person charged with the commission of a crime cannot be compelled to testify and is under no obligation to testify. The fact that the defendant did not testify raises no presumption of any kind against him. The defendant's election not to testify shall not be commented upon, referred to, or in any manner considered by the jury in reaching a verdict in this case.

*Trial Tr.* at 557. At trial, Vaughn requested that the first sentence of the instruction be removed, but the trial court denied his request. He now argues that the trial court abused its discretion in overruling his objection and giving the instruction in full. Vaughn contends that giving the full instruction highlighted his failure to testify at trial and violated his right against self-incrimination under both the Indiana Constitution and the United States Constitution.

Assuming without deciding that it was error to give the instruction over Vaughn's objection, it was harmless error. Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Lee v. State*, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012), *trans. denied*. An error is to be disregarded as harmless unless it affects the substantial rights of a party. *Id.* (citing *Oatts v. State,* 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61). "'Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by

19

the evidence and the jury could not properly have found otherwise.'" *Id.* at 862-63 (quoting

*Dill v. State,* 741 N.E.2d 1230, 1233 (Ind. 2001)).

Here, the evidence at trial showed that, on two occasions, the CI performed a controlled drug transaction with Vaughn. On both dates, the CI was searched, contacted Vaughn by telephone to set up a meeting, met with Vaughn, gave him money, and returned to the police with cocaine. On neither date, did the CI meet with any other individual besides Vaughn, nor did the officer lose sight of the CI except for the time he was inside the van during the second transaction. Detective Dooley had had prior contact with Vaughn and was able to identify him as the person who participated in the drug transactions with the CI. We, therefore, conclude that any error in giving Final Instruction No. 20 was harmless error and did not affect the substantial rights of Vaughn. His conviction was clearly sustained by the evidence presented at trial, and the jury could not properly have found otherwise.

Vaughn lastly claims that it was error for the trial court to give Preliminary Instruction No. 16 and Final Instruction No. 15, which both provided:

> Under the Constitution of Indiana, the jury has the right to decide both the law and the facts. In fulfilling this duty, you are to apply the law as you actually find it and you are not to disregard it for any reason. The instructions of the court are your best source in determining what the law is.

*Trial Tr.* at 189, 555. Vaughn asserts that the instructions violated Article I, Section 19 of the Indiana Constitution and invaded the province of the jury. Although Article I, Section 19 states that, "[i]n all criminal cases, the jury shall have the right to determine the law and the facts," Vaughn contends that the challenged instructions informed the jury it could not

20

disregard the law for any reason, which deprived the jury of its discretion to reject the Class A felony enhancement on his charges.

Our Supreme Court has rejected the notion that a jury has the right to disregard the law. *Holden v. State*, 788 N.E.2d 1253, 1255 (Ind. 2003), *cert. denied*, 541 U.S. 1048 (2004); *Bivens v. State*, 642 N.E.2d 928, 946 (Ind. 1994), *cert. denied*, 516 U.S. 1077 (1996). The Court has held that, "'it is improper for a court to instruct the jury that it has a right to disregard the law. Notwithstanding Article I, Section 19 of the Indiana Constitution, a jury has no more right to ignore the law than it has to ignore the facts in a case.'" *Holden*, 788 N.E2d at 1255 (quoting *Bivens*, 642 N.E.2d at 928). In *Cole v. State*, 790 N.E.2d 1049 (Ind. Ct. App. 2003), *trans, denied*, a panel of this court upheld the giving of an instruction identical to the one at issue in the present case, finding that "the trial court's instruction stating in part that the jury had no right to disregard the law for any reason was a correct statement of the law." 790 N.E.2d at 1055. Vaughn cites to cases dealing with habitual offender proceedings to support his contention that jury nullification was equally permissible here. However, habitual offender proceedings involve a status determination, and the proceedings at issue involve a determination of guilt for crimes charged. *Seay v. State*, 698 N.E.2d 732, 736 (Ind. 1998). We conclude that the trial court did not abuse its discretion when it gave Preliminary Instruction No. 16 and Final Instruction No. 15.

## IV. Sufficient Evidence

Our standard of review for sufficiency claims is well settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility

21

of the witnesses. *Parahams v. State*, 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therein to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id*. It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

Vaughn argues that the evidence presented at trial was insufficient to support his convictions for Class A felony dealing in cocaine and Class D felony maintaining a common nuisance. He claims that the State failed to prove beyond a reasonable doubt his knowing or intentional delivery of the cocaine. Vaughn asserts that the telephone calls between the CI and Vaughn only establish an arranged meeting, not a drug transaction, and there is no delivery visible on the videos. He contends that the State failed to prove that the cocaine produced by the CI at the end of the transactions came from Vaughn and that the CI had motivation to implicate Vaughn falsely. Vaughn further argues that there was insufficient evidence presented to support his maintaining a common nuisance conviction for the same reasons.

In order to convict Vaughn of dealing in cocaine as a Class A felony, the State was required to prove beyond a reasonable doubt that Vaughn knowingly or intentionally delivered cocaine and that such crime occurred within 1,000 feet of a public park. Ind. Code § 35-48-4-1. In order to convict Vaughn of maintaining a common nuisance as a

22

Class D felony, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally maintained a building, structure, vehicle, or other place that was used one or more times to unlawfully manufacture, keep, offer for sale, sell, deliver, or finance the delivery of a controlled substance. Ind. Code § 35-48-4-13(b).

A properly conducted controlled buy will permit an inference the defendant had prior possession of a controlled substance. *Ross v. State*, 908 N.E.2d 626, 630 (Ind. Ct. App. 2009) (citing *Watson v. State*, 839 N.E.2d 1291, 1293 (Ind. Ct. App. 2005)). This court has described a controlled buy as follows:

> A controlled buy consists of *searching the person who is to act as the buyer,* removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Id.* A pat-down search of the CI or buyer is sufficient, and a strip search or complete cavity search is not necessary. *Wright v. State*, 836 N.E.2d 283, 289 (Ind. Ct. App. 2005) (citing *Hudson v. State*, 462 N.E.2d 1077, 1083 (Ind. Ct. App. 1984)), *trans. denied*.

In the present case, the evidence presented showed that, on two occasions, police officers met with the CI, searched him, had the CI contact Vaughn, gave the CI buy money, outfitted the CI with a recording device, and sent the CI to Vaughn's apartment to purchase drugs. During the search of the CI, the officer searched his pockets, jacket, shirt, pants, shoes, socks, mouth, ears, and any place that could have hidden narcotics. The detective also had the CI pull his underwear out from his body and shake them to ensure there was

23

nothing hidden inside. On the date of the first controlled buy, the CI met with Vaughn outside of the apartment and handed Vaughn the buy money; Vaughn walked into the apartment, came back outside with his hand cupped, and engaged in a hand-to-hand exchange with the CI. On the second occasion, the CI went to Vaughn's apartment, Vaughn picked him up in a van, and the CI exited the van a minute later. On both occasions, the CI was searched when he returned to the officers, and cocaine was retrieved from him. On neither date, did the CI meet with any other individual besides Vaughn, nor did the officer lose sight of the CI except for the time he was inside the van. This proper procedure permitted the jury to reasonably infer that Vaughn sold the cocaine to the CI. Evidence was also presented that Vaughn's apartment was within 1,000 feet of a public park.

Additionally, the evidence showed that, on the first controlled buy, Vaughn entered into his apartment after accepting money from the CI and, after exiting, gave the CI cocaine. The jury could reasonably infer that Vaughn was using his apartment for the storage and sale of cocaine. On the second controlled buy, Vaughn sold the CI cocaine from his van. The jury could, therefore, infer that Vaughn kept cocaine in his vehicle and was using the vehicle to sell cocaine.

Vaughn's arguments are merely requests for this court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. *Parahams*, 908 N.E.2d at 691. We conclude that sufficient evidence was presented to support Vaughn's two Class A felony convictions for dealing in cocaine and Class D felony conviction for maintaining a common nuisance.

## V. Sentencing

A trial court's sentencing decisions are discretionary and entitled to "considerable deference" by the appellate courts. *Edsall v. State*, 983 N.E.2d 200, 205 (Ind. Ct. App. 2013). A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all"; (2) enters "a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons"; (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration"; or (4) considers reasons that "are improper as a matter of law." *Id*. (citing *Anglemyer v. State,* 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. *Id.*

Vaughn contends that the trial court abused its discretion in sentencing him to an executed term of three-and-a-half years for his maintaining a common nuisance conviction. He asserts that the maximum sentence for a Class D felony is three years, and therefore, his sentence exceeds the maximum sentence by six months. The State claims that the trial court did not abuse its discretion in sentencing Vaughn, but that the sentencing order contained a clerical error. The State argues that the oral sentencing statement imposed the correct maximum term of three years, and that the written statement's pronouncement of a three-and-a-half year sentence was merely a clerical error, requiring remand to correct. We agree.

25

When oral and written sentencing statements conflict, we examine them together to discern the intent of the sentencing court. *Walker v. State*, 932 N.E.2d 733, 738 (Ind. Ct. App. 2010). We may remand the case for correction of clerical errors if the trial court's intent is unambiguous. *Id*. (citing *Willey v. State,* 712 N.E.2d 434, 445 n.8 (Ind. 1999) ("Based on the unambiguous nature of the trial court's oral sentencing pronouncement, we conclude that the Abstract of Judgment and Sentencing Order contain clerical errors and remand this case for correction of those errors.")).

Here, in the trial court's oral sentencing statement, it imposed a three-year sentence for Vaughn's conviction for Class D felony maintaining a common nuisance. *Sent. Tr*. at 16. However, the trial court's written sentencing imposed a three-and-a-half year sentence. *Appellant's App*. at 20. The maximum sentence for a Class D felony is three years. Ind. Code § 35-50-2-7(a). We believe that it was the trial court's unambiguous intent to sentence Vaughn to three years for his Class D felony conviction. Therefore, the written sentencing statement and the abstract of judgment contain clerical errors. We remand to the trial court to correct these errors and reflect that Vaughn's sentence for his maintaining a common nuisance conviction is three years.

Affirmed and remanded.

BAILEY, J., and MAY, J., concur.