## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Mar 31 2015, 10:14 am
CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| P. Jeffrey Schlesinger<br>Public Defender<br>Crown Point, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Jesse R. Drum<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Randall Portis,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | March 31, 2015<br><br>Court of Appeals Case No.<br>45A03-1408-CR-285<br><br>Appeal from the Lake Superior Court<br><br>The Honorable Samuel L. Cappas, Judge<br><br>Trial Case No. 45G04-1306-FB-52 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, John Portis was convicted of one count of dealing in cocaine, a Class B felony. Portis appeals, raising the following two restated

issues for our review: (1) whether the State established a sufficient chain of custody for the cocaine purchased during a controlled buy on January 30, 2013; and (2) whether the evidence presented at trial was sufficient to support his conviction. Concluding that the State established a sufficient chain of custody and presented evidence sufficient to support a conviction, we affirm.

## Facts and Procedural History

[2] In mid-January 2013, Walter Howard agreed to work for the Hammond Police Department as a confidential informant. Howard identified "Smokey" as a person from whom he could buy cocaine and agreed to participate in controlled buys from Smokey. Howard had known Smokey "for a long time" but did not know Smokey's real name. Transcript at 27.

[3] On January 30, 2013, Howard called Smokey to arrange a controlled buy. Detective Michael Darnell of the Hammond Police Department supervised. Prior to the buy, Detective Darnell searched Howard for contraband, equipped Howard with an audio/video recording device, and provided Howard with buy money. Detective Darnell drove Howard from the police station to a grocery store parking lot at the corner of Sohl Avenue and Thornton Street. Howard called Smokey from the parking lot and proceeded to walk east on Thornton Street toward Calumet Avenue.

[4] Howard stopped at the corner of Thornton Street and Calumet Avenue and waited for approximately fifteen minutes. Detective Darnell spoke with

Howard on the phone while Howard was waiting, and Howard said that Smokey told him to wait on the corner. Detective Darnell testified that he did not see Howard come into physical contact with any other person while he waited.

[5] Smokey eventually exited a nearby building and met Howard at the corner. Smokey and Howard walked west on Thornton Street for about a block and then made the exchange at the corner of Thornton Street and Beall Avenue. Howard used the buy money to purchase two bags of cocaine. Detective Darnell was parked at the corner of Calumet Avenue and May Street, "about half a block" away. *Id.* at 200. From this vantage point, Detective Darnell personally observed the entire transaction, including the fifteen minutes that Howard waited on the corner. The transaction was also captured on video with the recording device Howard was wearing.

[6] After the buy, Howard continued walking west on Thornton Street—towards the grocery store parking lot—until Detective Darnell picked him up. Detective Darnell then drove Howard back to the police station to remove the recording equipment and search for contraband. Howard no longer had the buy money. Detective Darnell inventoried the suspected cocaine and took it to the Hammond Police Department vault. The inventory sheet is dated January 30, 2013, and references a particular case number. It identifies "[t]wo clear plastic bags with a white in color rock like substance inside of them" as items recovered in reference to an ongoing investigation. State's Ex. 8. The bags of suspected cocaine are listed as "EX#2" on the inventory sheet. *Id.* The

evidence envelope is also marked "EX#2" and references the same case number as the inventory sheet. State's Ex. 4.

[7] After the controlled buy on January 30, 2013, Howard was unable to set up additional buys. The police had not yet learned Smokey's real name and were unable to locate him. The investigation was revived when Howard called Detective Darnell approximately a month later and said he saw Smokey driving a black Crown Victoria in the neighborhood where the controlled buy had taken place. After conducting surveillance on the area, Detective Darnell found Smokey, determined Smokey's real name, and put together a photo lineup. On April 7, 2013, Howard picked Portis out of the photo lineup and identified him as the person who sold cocaine to him on January 30, 2013.

[8] Portis was arrested on June 6, 2013, and charged with two counts of dealing in cocaine, both Class B felonies.[1] Between January 30, 2013, and March 25, 2014, the suspected cocaine was kept in the Hammond Police Department vault. On March 25, 2014, Detective Anthony Mosier of the Hammond Police Department transported the suspected cocaine to the Indiana State Police ("ISP") Lab for testing. Sara Wildeman, a forensic drug chemist employed by the ISP Lab, received the evidence in a sealed envelope and determined that the "off-white rock-like substance" was indeed cocaine. State's Ex. 5. Wildeman's

---

[1] Portis was the target of two controlled buys. The first controlled buy occurred on January 25, 2013, and was charged as Count 1. The second buy occurred on January 30, 2013, and was charged as Count 2. Both buys were conducted by Howard and supervised by Detective Darnell. The jury returned a verdict of not guilty as to Count 1.

initials are written on the evidence envelope, and her certificate of analysis references the same case number listed on the evidence envelope and Detective Darnell's inventory sheet. She testified at trial that the evidence was returned to the Hammond Police Department upon completion of testing.

A jury trial was held on April 21, 2014, at which time Detective Mosier retrieved the cocaine from the Hammond Police Department vault. At trial, the cocaine was admitted without objection. Portis was found guilty on one count of dealing in cocaine for delivering cocaine to Howard on January 30, 2013. The trial court sentenced Portis to fourteen years, with eleven years to be served in the Indiana Department of Correction followed by three years in Lake County Community Corrections. Portis now appeals.

# Discussion and Decision

## I. Chain of Custody

### A. Standard of Review

Portis contends that the State failed to establish a sufficient chain of custody for the cocaine purchased during the controlled buy on January 30, 2013. Specifically, Portis argues that the chain of custody is insufficient because neither Howard nor Detective Darnell testified that Detective Darnell received the cocaine purchased from Portis that day. Because there was no chain of custody objection at trial, however, this claim is not available on appeal unless

the admission of the evidence constituted fundamental error. *Troxell v. State*, 778 N.E.2d 811, 814 (Ind. 2002).

[11] To establish fundamental error, the defendant must show that the alleged errors constitute blatant violations of due process and are so prejudicial to the defendant's rights that a fair trial is impossible. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Our supreme court has stressed that "[f]undamental error is meant to permit appellate courts a means to correct the most egregious and blatant trial errors that otherwise would have been procedurally barred, not to provide a second bite at the apple for defense counsel . . . ." *Id.*

### B. Chain of Custody for the Cocaine Purchased on January 30, 2013

[12] "The State is required to show a chain of custody for the purpose of showing the unlikelihood of tampering, loss, substitution or mistake[,]" but a perfect chain of custody is not required. *Vaughn v. State*, 13 N.E.3d 873, 882 (Ind. Ct. App. 2014) (citation omitted), *trans. denied*. "If the State presents evidence that strongly suggests the exact whereabouts of the evidence at all times, that is sufficient." *Id.* To successfully challenge chain of custody, the defendant must present evidence that overcomes the presumption that public officers exercise due care in handling evidence. *Troxell*, 778 N.E.2d at 814. Merely raising the possibility of tampering or mistake is insufficient. *Id.*

[13] Although neither Howard nor Detective Darnell testified that Detective Darnell received the cocaine from Howard, the State established a sufficient chain of custody for the cocaine. Howard testified that Portis gave him "two bags" of

cocaine for sixty dollars. Tr. at 76. Detective Darnell testified that he searched Howard prior to the buy and that he personally observed the transaction. Before the buy, Howard did not possess cocaine. After the buy, Howard no longer had the buy money, and Detective Darnell inventoried two bags of cocaine as "EX#2." State's Ex. 8. The inventory sheet is dated January 30, 2013, and references a specific case number. The evidence envelope, also marked "EX#2," references the same case number. State's Ex. 4. The cocaine was transported to the Hammond Police Department vault, where it was stored until Detective Mosier took it the ISP lab for testing. After testing, the evidence was returned to the Hammond Police Department. It remained there until the day of trial.

[14] Because the evidence presented at trial "strongly suggests the exact whereabouts of the [cocaine] at all times," *Vaughn*, 13 N.E.3d at 882, the State established a sufficient chain of custody. Portis is merely raising the possibility of tampering or mistake, which is insufficient to overcome the presumption of due care in evidence handling. *Troxell*, 778 N.E.2d at 814. Portis has not established error, let alone the kind of prejudice necessary to support a claim of fundamental error.

## II. Sufficiency of Evidence

### A. Standard of Review

[15] Portis also argues that the evidence presented at trial was insufficient to support his conviction for dealing in cocaine as a Class B felony. When reviewing the

sufficiency of the evidence to support a conviction, we neither reweigh the evidence nor judge witness credibility. *Wright v. State*, 828 N.E.2d 904, 905-06 (Ind. 2005). We consider "only the evidence most favorable to the verdict and any reasonable inferences that may be drawn from that evidence." *Freshwater v. State*, 853 N.E.2d 941, 942 (Ind. 2006). The conviction will be affirmed unless no reasonable trier of fact could find the elements of the offense proven beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007).

## B. Evidence to Support the Dealing Conviction

To convict Portis of dealing in cocaine as a Class B felony, the State was required to prove beyond a reasonable doubt that Portis knowingly or intentionally delivered cocaine. Ind. Code § 35-48-4-1(a)(1)(C) (2013).

Portis was the target of a controlled buy. This court has described a controlled buy as follows:

> A controlled buy consists of searching the person who is to act as the buyer, removing all personal effects, giving him money with which to make the purchase, and then sending him into the residence in question. Upon his return he is again searched for contraband. Except for what actually transpires within the residence, the entire transaction takes place under the direct observation of the police. They ascertain that the buyer goes directly to the residence and returns directly, and they closely watch all entrances to the residence throughout the transaction.

*Ross v. State*, 908 N.E.2d 626, 630 (Ind. Ct. App. 2009) (quoting *Mills v. State*, 177 Ind. App. 432, 434, 379 N.E.2d 1023, 1026 (1978)). A properly conducted

controlled buy with adequate controls permits an inference that the target had prior possession of a controlled substance. *Vaughn*, 13 N.E.3d at 888.

[18] Here, the controls were in place but largely unnecessary because the entire transaction took place on the street rather than inside a residence. Detective Darnell testified that he could see Howard the entire time and personally witnessed the exchange of cash for cocaine. He described the buy: "[A]s soon as [Portis] made contact with the informant, they started walking west on Thornton to about Beall Street. There is a tree right there where they kind of stopped right there and the transaction occurred." Tr. at 165. Moreover, the State admitted video of the transaction, and the confidential informant testified at trial. Howard testified that he called Portis on January 30, 2013, to set up the buy and that he did in fact purchase "two bags" of cocaine from Portis that day. *Id.* at 76. Howard likewise described the buy: "We made the buy right on the street . . . . He handed it to me when we came across Beall . . . . He handed me the stuff and I handed him the money." *Id.* at 71. Finally, the substance that Portis sold to Howard tested positive for cocaine.

[19] The evidence is more than sufficient to support Portis's conviction for dealing in cocaine. *See Hudson v. State*, 462 N.E.2d 1077, 1083 (Ind. Ct. App. 1984) ("[T]he sole uncorroborated testimony of the informant-buyer is sufficient to convict, despite any arguable inadequacies in the controls of the buy.").

# Conclusion

[20] The State established a sufficient chain of custody for the cocaine and presented evidence sufficient to support the conviction. Portis's conviction is therefore affirmed.

[21] Affirmed.

Bailey, J., and Brown, J., concur.