## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 18 2019, 7:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael P. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles C. Clock,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 18, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2855<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Thomas A. Cannon, Jr., Judge<br><br>Trial Court Cause No.<br>18C05-1804-F4-17 |

**Friedlander, Senior Judge.**

[1] Charles C. Clock appeals his convictions by jury of Level 4 felony dealing in methamphetamine[1] and Level 4 felony dealing in a narcotic drug.[2] One issue is raised on appeal: did the State present sufficient evidence to support a finding of guilt? We affirm.

[2] The facts favorable to the conviction are that the Muncie Police Narcotics Unit ("MPNU") entered into an agreement with a confidential informant ("CI") to conduct two controlled buys from Clock after receiving information that he might be dealing in methamphetamine. The CI first arranged to purchase methamphetamine from Clock on January 22, 2018 at Clock's residence. MPNU Officers, Sergeant Bret Elam and Sergeant Michael Nickens, completed pre- and post-buy procedures to be sure that she was not in possession of "any controlled substances, money, or weapons." Tr. Vol. II, p. 10. The officers equipped the CI with an audio-video recording device and handed her cash that they had previously photocopied to track any sale.

[3] Sgt. Elam then drove the CI to Clock's residence. The CI walked straight into the residence and addressed Clock by his name, "Chucky." *Id.* at 169. Clock then sold methamphetamine to the CI for $40 of the photocopied cash. The CI returned directly to Sgt. Elam's car to turn over the recording device, left-over photocopied cash, and a baggie containing a substance. The substance was

---

[1] Ind. Code § 35-48-4-1.1 (2017).

[2] Ind. Code § 35-48-4-1 (2017).

later identified as methamphetamine. Upon review of the recording, Sgt. Nickens was also able to identify Clock's voice during the transaction. The recording also revealed Clock's negotiation regarding price and the arrangement of a future sale with the CI.

[4] The second sale took place on February 7, 2018. The officers and the CI followed the same controlled buy processes. Clock sold what was later confirmed as heroin to the CI for $20 of photocopied cash. Sgt. Nickens both auditorily and visually identified Clock, who was wearing a red hoodie, as being present. Again, Clock is heard discussing the sale of the drug with the CI.

[5] About an hour following the second sale, the Muncie Police Department conducted a traffic stop on a vehicle being driven by Clock. Officer Joseph Winkle made contact with Clock, who wore a red hoodie underneath a jacket. Clock was searched and two $20 bills were found on his person. The serial number on one of the bills matched the serial number of a bill the CI used in the purchase of the heroin. A loaded .22 caliber handgun was also found in Clock's vehicle. Clock was released but was subsequently arrested on March 29, 2018.

[6] The State charged Clock with three counts: Count I, dealing in methamphetamine, as a Level 5 felony; Count II, dealing in a narcotic drug, as a Level 5 felony; and Count III, unlawful possession of a firearm by a serious violent felon, as a Level 4 felony. A jury trial was held in two phases. In phase one, the jury convicted Clock on Counts I and II; and acquitted him of Count III. In phase two, the jury found that Clock's prior convictions for dealing in

methamphetamine enhanced Counts I and II to Level 4 felonies. The trial court then sentenced Clock to an aggregate sentence of six years. This appeal followed.

[7] Clock contends the evidence was insufficient to sustain his convictions of dealing in methamphetamine and dealing in a narcotic drug. He does not dispute that a CI, working with the MPNU, engaged in two controlled buys involving methamphetamine and heroin. Specifically, Clock only claims the State did not provide sufficient evidence to prove he was the dealer.

[8] Our standard of review for challenges to the sufficiency of evidence supporting a criminal conviction is well settled.

> When reviewing a claim that the evidence introduced at trial was insufficient to support a conviction, we consider only the probative evidence and reasonable inferences that support the trial court's finding of guilt. We likewise consider conflicting evidence in the light most favorable to the trial court's finding. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. Instead, we will affirm the conviction unless no reasonable trier of fact could have found the elements of the crime beyond a reasonable doubt.

*Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011) (citations omitted). We neither reweigh the evidence nor assess the credibility of witnesses when considering a challenge of sufficiency. *Turner v. State*, 953 N.E.2d 1039 (Ind. 2011).

[9] On Count I, the State charged Clock with dealing in methamphetamine, a Level 4 felony. Indiana Code section 35-48-4-1.1(1)(A) states: "(a) A person

who: (1) knowingly or intentionally: (A) delivers . . . methamphetamine, pure or adulterated; . . . commits dealing in methamphetamine." "Delivery" is defined as "(1) an actual or constructive transfer from one [ ] person to another of a controlled substance . . . ; or (2) the organizing or supervising of an activity described in subdivision (1). Ind. Code § 35-48-1-11 (1990).

[10] We agree the State has presented sufficient evidence to prove each element of the offense beyond a reasonable doubt on Count I. The MPNU began investigating Clock after receiving information that he was dealing in controlled substances.

[11] The first controlled buy resulted in the purchase of methamphetamine. The officers screened the CI with pre- and post-buy procedures which were much more extensive than our courts require in such situations. *See, e.g., Vaughn v. State,* 13 N.E.3d 873 (Ind. Ct. App. 2005) (a pat-down search of the CI or buyer is sufficient, and a strip search or complete cavity search is not necessary) (citations omitted), *trans. denied.* Since officers of the narcotics unit could not follow the CI into Clock's residence, she was equipped with a recording device. In *Vaughn*, a conviction based largely on evidence from two controlled buys was upheld. The court assuaged concerns of the use of a CI where the surveilling officers lost sight of the CI and dealer during the sale. The court explained that "proper procedure permitted the jury to reasonably infer that Vaughn sold the cocaine to the CI." 13 N.E.3d at 889. In addition to the procedures, the jury was aware the CI was dropped off at Clock's residence and returned directly to MPNU officers with a substance later identified as

methamphetamine. The CI also returned with $40 less photocopied cash than she entered with.

[12] The recordings made during the sale are also instructive. The CI addressed Clock by his name, and an officer recognized Clock's distinctive voice. Clock is heard negotiating a price for the methamphetamine and discussing a future sale with the CI. A jury, using the information above, could find beyond a reasonable doubt that Clock dealt in methamphetamine.

[13] On Count II, the State charged Clock with dealing in a narcotic drug, a Level 4 felony. Indiana Code section 35-48-4-1 states: "(a) A person who: (1) knowingly or intentionally . . . (C) delivers . . . cocaine or a narcotic drug, pure or adulterated, classified in schedule I or II . . . ; commits dealing in cocaine or a narcotic drug." Delivery is defined the same as above. Ind. Code § 35-48-1-11.

[14] The CI arranged a second controlled buy on February 7, 2018 for the purchase of methamphetamine. The same pre- and post-buy procedures were followed as in the first controlled purchase; and the CI was again equipped with photocopied cash and video recording equipment. The CI entered Clock's residence in the same manner as the first buy. Again, an officer recognized Clock's conspicuous voice negotiating over the type and cost of drugs available for sale. When the CI asked Clock to purchase heroin, Clock responded, "that's what it's there for," and asked if he could use an old baggie that "already had dope in it." St. Ex. 8.

[15] A properly conducted controlled buy will permit an inference that Clock had prior possession of the heroin. *Vaughn*, 13 N.E.3d at 888. The evidence allows for a reasonable conclusion that Clock engaged in the transaction despite the actual exchange of heroin for money not being captured on video. However, Clock himself was recorded on video during the transaction wearing a red hoodie. When Clock was pulled over in a traffic stop later that same evening, he was wearing a red hoodie and had one of the photocopied $20 bills on his person that matched the serial number of the original. This evidence would lead a jury to conclude beyond a reasonable doubt that Clock was dealing in a narcotic drug.

[16] Clock notes other people were present at his residence during the transactions and claims one of them could have sold the controlled substances to the CI. This claim is ultimately a request to reweigh the evidence to confirm some other "hypothesis of innocence," which we cannot do. *Gray*, 957 N.E.2d at 174; *see also Turner*, 953 N.E.2d at 1059. For the foregoing reasons, we conclude that the evidence was sufficient to support the convictions.

[17] Judgment affirmed.

Riley, J., and Mathias, J., concur.